## MORRISON et al. v. PETTIGREW et al.

(District Court, E. D. New York. September 2, 1926.)

**1. Courts ⬅260.**

Federal court, in suit to enjoin enforcement of village zoning ordinance, has jurisdiction, not only to decide question of jurisdiction, but also motion to strike out defendants' answer.

**2. Evidence ⬅25(2).**

Federal court for Eastern district of New York may take judicial notice of real estate development, necessitating regulations in form of village zoning ordinances.

**3. Municipal corporations ⬅601.**

Village trustees, acting for best interests of village, and with proper purpose, and not unreasonably, may properly enact zoning ordinance, under delegated state power.

**4. Pleading ⬅354(2).**

Motion to strike out answer in suit to enjoin enforcement of village zoning ordinance will be denied, where determination of defenses set up requires consideration of facts not conceded or undisputed.

**5. Constitutional law ⬅48.**

There is no presumption that state statute, or ordinance adopted pursuant to it, is unconstitutional.

**6. Constitutional law ⬅48.**

Violation of Constitution must be clear, to justify courts in declaring it invalid.

**7. Courts ⬅370.**

Whether village zoning ordinance is ultra vires should be determined in state courts, rather than by suit in federal court to enjoin enforcement on ground of invalidity of statute (Village Law, §§ 175–177) authorizing it.

In Equity. Suit by Eleanor Morrison and others against Bertrand L. Pettigrew and others. On plaintiffs' motion to strike out defendants' answer. Motion denied.

Oscar B. Bergstrom, of New York City (E. A. Brown, of New York City, of counsel), for plaintiffs.

Van Doren, Conklin & McNevin, of New York City, for defendants.

INCH, District Judge. This is a motion by plaintiff to strike out the defendant's answer, in an equity suit, commenced by plaintiff against defendants, having for its object the restraining of the defendants (who are the board of trustees and the clerk of the village of the Great Neck Estates) from interfering with the construction by plaintiff of a number of buildings, proposed to be constructed by her, in said village, and that the clerk of said village be enjoined from enforcing a certain zoning ordinance of said village, which affects the construction and occupancy of said buildings.

The bill of complaint was filed in the clerk's office of this court May 27, 1926. The defendants filed their verified answer on June 16, 1926. The answer contains denials and certain defenses. It appears, from the papers submitted, that in 1923 the Legislature of the state of New York duly passed a law by which, among other things, a grant of power was given to villages in the state of New York, such as the village of Great Neck Estates. This grant of power was substantially as follows:

"Sec. 175. *Grant of Power.* For the purpose of promoting the health, safety, morals, or the general welfare of the community, the board of trustees of a village is hereby empowered, by ordinance, to regulate and restrict the height, number of stories and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence or other purposes. Such regulations may provide that a board of appeals may determine and vary their application in harmony with their general purpose and intent, and in accordance with general or specific rules therein contained.

"Sec. 176. *Districts.* For any or all of said purposes the board of trustees may divide the village into districts of such number, shape and area as may be deemed best suited to carry out the purposes of this act; and within such districts it may regulate and restrict the erection, construction, reconstruction, alteration, repair or use of buildings, structures or land. All such regulations shall be uniform for each class or kind of buildings throughout each district but the regula-

tions in one district may differ from those in other districts.

"Sec. 177. *Purposes in View.* Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the streets; to secure safety from fire, panic and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population; to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration, among other things, as to the character of the district and its peculiar suitability for particular uses, and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality."

Article VI–A of the Village Law (Consol. Laws, c. 64), entitled "Building Zones," as added by chapter 564 of the Laws of 1923, McKinney's Village Law, vol. 63, Supplement 1925, page 29.

The real purpose of this suit, and the sole basis of jurisdiction claimed to be in this court, is the claim that this ordinance of the board of trustees of said village, passed pursuant to their understanding of this granted power by the state of New York, as well as the statute, offends the Constitution of the United States, in that either the ordinance represents a misconception of this granted power, and is thus ultra vires, or, if such ordinance is within said grant of power, the said statute then so offends.

There is no diversity of citizenship. While the real estate is within the Eastern district, it is also within the state of New York, and governed by its laws, and the said state of New York has apparently provided ample statutory procedure to prevent injustice caused by arbitrary and unlawful ordinances (see Village Law, supra), including the opportunity to apply to a state court, and, of course, the door is open to apply from such state court to the Supreme Court of the United States, should a proper case be found by the latter court requiring such step.

At the outset, therefore, it appears that the plaintiff does not desire to test this village ordinance and state statute in the state courts, and, in case she is aggrieved, then apply to said federal court, but prefers, in the first instance, to commence her suit in a federal court. The excellent and thoughtful argument made by the counsel for plaintiff, as well as the equally able argument made by counsel for defendant, present a number of points which, in view of my decision, it is unnecessary to go into at this time. They may or may not arise at the trial.

[1] I agree with counsel for the plaintiff that, where such a suit is brought, this court has jurisdiction, not only to decide the question of jurisdiction (Flanders v. Coleman, 250 U. S. 223, 39 S. Ct. 472, 63 L. Ed. 948), but also this motion (New Orleans M. & T. R. Co. v. Mississippi, 102 U. S. 135, 26 L. Ed. 96). However, it should not be overlooked that this is a motion to "strike out," and is not a trial of the issues.

The complaint would seem to set up allegations based on important facts, which, with the inferences therefrom, may become very material to a proper decision of the issues. The answer, by denials, etc., makes it equally important that these facts be decided at a trial. The plaintiff contends, however, that this answer is insufficient, to such an extent, as a matter of law, that it should be stricken out.

The undisputed facts are that in the months of April and June, 1925, plaintiff purchased some real estate in the village of Great Neck Estates suitable for residential purpose. One plot is said to have 22,000 square feet; the other plot 5,500 square feet. About a year later, to wit, March, 1926, the board of trustees and the clerk of the said village (the defendants, who appear to be named individually, but no point is made of that by defendants) passed a "zoning" ordinance, which plaintiff claims not only restricts or regulates the use to be made by her of this property, but constitutes a "taking" without due process of law.

The use of the words "square feet" would impress one, at first, in a large sense. If one realizes, however, that this may be a plot 220 feet front, along a street, with a depth of 100 feet, the size of the plot does not remain so impressive, especially in a village, and adjoining a golf links. The same reasoning applies to the smaller plot of 5,000 feet. I do not mean by this to even remotely intimate that the size of a plot has anything to do with the rights of its owner to object to an unlawful taking, by the village, of even a foot of her ground; but I do mean to indicate that very possibly the actual use by plaintiff, and the regulation thereof by the village, of such a sized plot, may on a trial be shown to be, not only an ordinary, but exceedingly sensible, one. Whether or not this is so would seem to be something that should be left to the trial.

[2] The fact is, and I mention it, not because

such may be found to be the case here, but simply as a matter of which this court can take judicial notice in this Eastern district, in which the said village is, that the growth of this great city and the activity of those interested in real estate development has brought about a situation, in all towns and villages reasonably near the city proper, whereby a condition has arisen, and is facing those, such as these defendants, charged as they are with the duty of seeing that proper provisions are wisely and legally taken, requiring protective steps to guard those living in the village against the hazards of fire, lack of water, and general conditions associated with "living" dangers of every kind.

Unfortunately, in more than a few instances, speculators in real estate, having no other aim but to build as quickly and as cheaply as possible, and to sell and start another so-called "development," buy, at what seems a large price for vacant land to be reasonably and safely used, and then proceed to "rush up," as close to each other as possible, frame dwellings, whose deterioration starts at once, in order to make the investment "pay"; the result being the necessity for cesspools, far outnumbering the proper amount in such a space, the inability of that particular section to safely, reasonably, and properly "digest" this sudden influx of home owners, the presence of a great fire hazard, and the presence of other evils, which menace, not only the lives of those who have thus come into the neighborhood, but of the very town itself.

Large growth is and should be welcome, and the ownership of a home makes better citizens; but where there are so many builders, who do build properly, it would seem to be an absolute necessity for the village trustees to protect the town against such dangers as I have mentioned, and those easily suggested by them. Proper regulation of such matters protects everybody.

[3, 4] Accordingly, if the Legislature of the state of New York has been made aware of such conditions, and has granted power, as it must, to enforce this state protection, to the various towns and villages, for the benefit of the citizens thereof, and the board of trustees of such village can show, when called upon in the proper forum, that it has not acted capriciously, or unreasonably, or partially, but has acted with the best interests of that village at heart, and with a distinct, reasonable, and proper purpose, that such exercise of the state power is a proper one, by whatever name it is called. Some may prefer to call it "police power." Some may prefer to call it "governmental regulation." It is

all confined to the same purpose, to wit, the promoting of the health, safety, morals, and general welfare of the community.

To be sure, it must be regulation. It must not be an exercise of eminent domain. Forster v. Scott, 136 N. Y. 577, 32 N. E. 976, 18 L. R. A. 543. If the proper and lawful regulation interferes with some right to use or enjoy, it is the "purpose" of the regulation, which compels the rights of the individual to yield to the general health, safety, and welfare. Chicago v. People, 200 U. S. 561, 26 S. Ct. 341, 50 L. Ed. 596, 4 Ann. Cas. 1175.

It is not necessary to discuss the cases which distinguish between what constitutes a "taking" and the lawful exercise of this "power." There is a difference. This difference depends upon facts. The facts depend on a trial, unless plainly conceded and undisputed, together with all the inferences to be drawn therefrom. Such questions should not be disposed of upon affidavits, but should await a trial.

[5] The above indicates to me sufficient to warrant the denial of this motion, provided any proper "regulation," in the shape of a "zoning" law, is constitutional. There is no presumption that such state statute or ordinance is unconstitutional. Thomas Cusack v. City, 242 U. S. 526, 37 S. Ct. 190, 61 L. Ed. 472, L. R. A. 1918A, 136, Ann. Cas. 1917C, 594.

[6] "But in all the cases there is the constant admonition, both in their rule and examples, that when a statute is assailed as offending against the higher guaranties of the Constitution it must clearly do so, to justify the courts in declaring it invalid." Eubank v. Richmond, 226 U. S. 137, 143, 33 S. Ct. 76, 77 (57 L. Ed. 156, 42 L. R. A. [N. S.] 1123, Ann. Cas. 1914B, 192).

"A zone is a belt. Medieval walled towns in Europe were somewhat circular in form. When they outgrew their walls, especially in the case of large cities, the location of the walls would be made into public parks or circular boulevards, and outside of the former walls the land would be laid out in belts, sometimes restricted to different classes of residences. These were called belts or zones. The term 'zoning,' therefore, does not apply strictly in our cities, where the different districts assume all sorts of forms, although in general there is a recognition of intensive use in the center of the city, surrounded by belts of greater distribution as one goes toward the edge of a city. The creation of different districts, accompanied by the application of different regulations, was five years ago (1915) called districting, but this word was so apt

to be confused with political districts that public favor caught and used the word zoning." Page 318.

" * * * Police power zoning can be altered to fit the changing needs of a growing city, but zoning by condemnation would ossify a city. Some cities, after making a mistake in zoning and receiving a setback from the courts, think they must have a constitutional amendment permitting zoning. Constitutional amendments regarding the police power should be avoided, unless they are absolutely necessary.· The police power residing in the state Legislature should be ample for zoning, if zoning is done wisely." Pages 320, 321.

"Zoning looks mainly to the future. The zoning of built-up localities must recognize actual conditions and make the best of mistakes of the past. But the zoning of open areas, while following desirable natural tendencies, must check the undesirable tendencies." Page 328.

See interesting and instructive article by Edward M. Bassett, National Municipal Review, vol. IX, No. 5, May, 1920.

This power of a state to regulate at any time for the health, general welfare, etc., of a community, is established, and needs no extended citation. Noble v. Haskell, 219 U. S. 104, 31 S. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1062,·Ann. Cas. 1912A, 487; Bacon v. Walker, 204 U. S. 311, 27 S. Ct. 289, 51 L. Ed. 499; Fox Lane Corporation v. Moore, 243 N. Y. —, 153 N. E. — (Mem., decided June 8, 1926); Hadacheck v. Sebastian, 239 U. S. 394, 36 S. Ct. 143, 60 L. Ed. 348.

In all the cases cited to me by both counsel for plaintiff and defendant there were, it would seem, "facts" necessary to be decided before any decision of the question of law. In other words, the constitutionality or unconstitutionality of such a statute or ordinance must ordinarily be viewed, in the light of facts and surrounding circumstances, which can be only proved, where not admitted, at a trial.

[7] It is not unlikely that this court may be confined to the question of the validity of the state statute. I do not pass on this; "for the ordinance in this court, as hereinbefore shown, must stand or fall with the statute, it having been enacted in pursuance of express authority conferred by the statute." Eubank v. Richmond, page 139, supra.

"We do not notice the contention that the ordinance is not within the city's charter powers, nor that it is in violation of the state Constitution; such contentions raising only local questions, which must be deemed to have been decided adversely to petitioner by the Supreme Court of the state." Hadacheck v. Los Angeles, supra, page 414 (36 S. Ct. 147).·

I have mentioned this solely for the reason that plaintiff contends that, even if the statute is valid, the local ordinance of the village of Great Neck Estates is ultra vires. The state law provides for the settlement of any such local question by the state courts.

As to such defenses in the answer, it may well be that, before plaintiff can have an ordinance, passed pursuant to state statute, declared ultra vires, the remedies, made a part of the statute, for the purpose of preventing that very thing, should be first availed of in the state courts, whose duty to construe their own statutes is rarely interfered with by federal courts. New York-Brooklyn v. Fuller (C. C. A.) 11 F.(2d) 802, at page 804; Passaic Valley Sewerage et al. (C. C. A.) 11 F. (2d) 748, at page 749.

It is, however, unnecessary that all of defendant's defenses should be sufficient for the purposes of this motion, and all such questions should be left to the trial. Nor have I overlooked the denials in the defendant's answer which raise or tend to raise issues of fact, which should be decided at a trial.

Accordingly I deny the motion, without prejudice to motions that may be made, at the proper time, at a trial of the issues.