In the Matter of FLOWER HILL BUILDING CORPORATION, Petitioner, against VILLAGE OF FLOWER HILL, NASSAU COUNTY, Respondent.

Supreme Court, Special Term, Nassau County, June 8, 1950.

*Francis Froehlich* for petitioner.

*Edward S. Bentley* for respondent.

CUFF, J. Petitioner is a builder who applied for a permit to erect a dwelling in district A-3 in the village of Flower Hill, Nassau County, New York. The proposed building will provide approximately 1,645 square feet of livable floor area. On December 3, 1948, and on April 4, 1949, respondent village adopted ordinances amending its Building Zone Ordinance and its Building Code respectively, which in effect prohibit erection of dwellings in district A-3 which provide less than 1,800 square feet of livable floor area. The respondent village, because of those ordinances has denied petitioner's application for a building permit. Petitioner, by a motion, seeks an order (mandamus) pursuant to article 78 of the Civil Practice Act directing respondent to issue the permit. Respondents oppose on the ground that petitioner's proposed building would violate the " 1800 square feet livable area " ordinances.

I cannot agree with petitioner that there was a legal defect in the procedure preliminary to adoption of the amendment to respondent village's Building Code in that the amendment, as adopted, differed substantially from the proposed amendment as it appeared in the advertised (required by law) public notice. The difference is not substantial.

Petitioner further argues that respondent village exceeded its authority when it legislated *at all* concerning livable floor area in dwellings. Petitioner maintains that in treating with " livable floor area " by zoning ordinances, respondent village dealt with a subject lacking a reasonable relationship to the promotion of the public health, safety and general welfare, which relationship all zoning legislation must bear. (Citing *Matter of Oppenheimer* v. *Kraus,* 221 App. Div. 773, affd. 246 N. Y. 559; *Knickerbocker Ice Co.* v. *Sprague,* 4 F. Supp. 499.)

Counsel advise the court that no authorities in this State answer the question: May a zoning ordinance regulate space to be devoted to livable areas in dwellings?

Petitioner cites a Michigan case, wherein the court, having before it statutory provisions similar to ours, decided that an ordinance enacted thereunder, limiting dwellings to " 1,300 square feet of usable floor area " in " no way promotes or protects in this subdivision public health, safety, morals or welfare " and ruled that it was an unjust limitation placed upon the use of the petitioner's property. (*Senefsky* v. *City of Huntington Woods,* 307 Mich. 728, 731, 738.) On the other hand, the Appellate Division of this department has approved an ordinance which provided a minimum area of two acres of land for a dwelling to occupy (*Dilliard* v. *Village of North Hills,* 276 App.

Div. 969), and the Court of Appeals held that a minimum height of buildings could be fixed by zoning ordinance. (*Matter of Wulfsohn* v. *Burden,* 241 N. Y. 288.)

The United States Supreme Court has stated that the power of the local municipal authority, legislating under an enabling statute of a State, may not be judged by an abstract consideration " but by considering it [the ordinance] in connection with the circumstances and the locality." (*Village of Euclid* v. *Ambler Realty Co.,* 272 U. S. 365, 388.)

It does not seem that the Michigan case is useful in this litigation at this time. There the appellate court held, after a trial had been had, that a 1,300 square feet of livable floor area, as against 980 square feet in petitioner's building, " in no way promotes or protects *in this subdivision* public health, safety, morals or welfare." (*Sensfsky* v. *City of Huntington Woods, supra,* p. 738, italics supplied.) The court had immediately before described " this subdivision " by relating in detail the number of houses and floor space therein, stressing the number of houses erected prior to the effective date of the ordinance wherein livable floor space provided was less than 1,300 square feet. In its decision, the court was motivated by the character of the community. The case does not hold that the local municipality was powerless to legislate with regard to livable floor area. Was not the court's weighing the reasonableness of the restriction imposed, an approval of the municipality's right to legislate properly on the subject?

Subdivision 30 of section 89 of the Village Law confers upon villages power to legislate concerning " bulk of buildings." Livable floor space cannot be regarded as wholly unrelated to " bulk ".

Section 175 of the Village Law grants villages the power " to regulate and restrict * * * ,size of buildings ". Perhaps analogy should cease at that point for regulating and restricting the size of buildings can hardly be disassociated from the amount of floor space within buildings. Does not the one wholly determine the other?

There should, however, be a less narrow approach to this problem. What does all of this zoning legislation mean? It seems to be the ambition of people to live on the great expanse of land which our country possesses in that way which will give them the most out of life. Our people seem to know how to attain that objective, for they live well. At one time, it must have been popular to live near, in fact adjacent to was considered better, the factory, foundry, plant or industry wherein

employment was obtainable. No doubt that disposition had its origin in part in the vexatious problems of transportation. By about 1916, when the first comprehensive zoning ordinance was enacted by the City of New York (Metzenbaum on the Law of Zoning, p. 17) vehicular traveling had been rendered easier and forward-looking State governments could foresee that transportation of passengers was soon to be quickened and rendered safer. The demand for open spaces in which to live was so general that a belt of homes developed around the peripheries of each large city and village. The inhabitants wanted to live where they felt life was more abundant, and they were willing to defy inconvenience and bear additional expenses. Nearness to industry and to sites of employment was sacrificed in favor of better housing and better living. It is not necessary to cite mortality tables to show that better living has extended lives.

Generally speaking, those were some of the conditions which confronted our State governments throughout the nation which, sensitive to the evident public demand for that better living, from time to time enacted laws enabling local communities to regulate living conditions within their own borders under certain limitations. I understand that in every State in the Union, laws authorizing zoning by local authorities pivoting about the standard to promote the public health, safety, morals and general welfare of the community have been enacted. (See Smith on Zoning Law and Practice, pp. 3, 10, and *Bove* v. *Donner-Hanna Coke Corp.*, 236 App. Div. 37.)

Treating with the New York statute specifically, the intendment of the State seems to have been to grant, under its police power, to local authorities power to adopt ordinances (zoning regulations) which would encourage better living for the municipalities' inhabitants and protect those inhabitants when established in their abodes, against invasion of their neighborhoods by other activities and buildings, by their nature out of harmony with the order established. Even the local authorities were cautioned by the enabling law to recognize, when zoning, the *status quo* of each community and division thereof, for after granting the power to zone the statute provides: " Regulations under this subdivision shall be designed to promote the public health, safety and general welfare, and shall be made *with reasonable consideration* among other things *to the most desirable use for which the land of each district may be adapted, the peculiar suitability for particular use of a district, the conservation of property values and the direction of building develop-*

*ment,* in accordance with a well considered plan." (Village Law, § 89, subd. 30; italics supplied.)

Curtailing local municipalities in the exercise of the legislative powers granted them, by voiding their ordinances merely because the particular subject before the court is not mentioned *in haec verba* in the enabling statute, will gradually defeat this great zoning reform, leaving in the wake of such legal strictures, only memories of well-established communities. The broad ambition and evident intent of the State zoning legislation should receive the fullest endorsement and cooperation of the court to the end that the objectives hoped for be achieved. Those objectives must be regarded generally as a sustained effort by the State to serve the vital interests of humanity by improving living conditions and rendering the established order in neighborhoods reasonably stable. Only recently, United States District Judge INCH made certain timely, pointed and enlightened observations on this subject, treating with a problem in a village practically adjacent to the defendant village of Flower Hill (*Morrison* v. *Pettigrew,* 14 F. 2d 453).

I consider that it was the intent of the zoning statute to throw around each community, an arm of protection in the form of a local zoning ordinance, which could insure its inhabitants against radical zoning changes (not necessitated by public demand and by changing conditions of the neighborhood) which would be detrimental to their established living conditions, their property values and the most desirable use of their lands. (Village Law, § 89, subd. 30.)

When the enabling statute empowers the municipality to act with respect to " size of buildings " (Village Law, § 175) and " bulk of buildings " (Village Law, § 89, subd. 30) by implication it authorizes zoning regulations treating with livable floor space in dwellings. I find that regulating by local authorities livable floor area in dwellings is only giving effect to the intent and spirit of the enabling law.

Because the village has the power to legislate on a subject of course does not release the check which the law holds over the scope of such enactments. Those local authorities may not legislate without reason, with partiality or capriciously in fixing the amount of livable floor area to be devoted to each dwelling. Their regulations, to be valid, must be consonant with the character and needs of the community directly affected and be inspired to promote the public health, safety, morals and general welfare of the community. What may be a proper limit in one zoned area may be wholly oppressive and inappropriate for

another. (*Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 388, *supra.*) All circumstances, the statute demands, must receive '' reasonable consideration.'' (Village Law, § 89, subd. 30.)

On this application, I am unable to determine whether the '' 1800 square feet '' restriction is within the statutory discretion of the village authorities. Defendant contends that its board of trustees acted within the scope of its authority; petitioner maintains that it exceeded its authority. A question of fact is presented which may be disposed of only at a trial. Petitioner's motion for a peremptory order must be denied. A trial of the issues herein presented is directed.

Order on notice.