28 N.J. Super. 26 (1953)
100 A.2d 182
BOROUGH OF CRESSKILL, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ET ALS., PLAINTIFFS,
v.
BOROUGH OF DUMONT, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 15, 1953.
*29 Mr. Arthur J. O'Dea, attorney for plaintiffs Borough of Cresskill and Frank P. Ryer.
Mr. Frank H. Hennessy, attorney for plaintiffs Borough of Haworth and William Wendland and Marjorie Wendland.
Mr. William A. Fasolo, attorney for plaintiffs Borough of Demarest, Robert Austin, June Austin, Robert H. Jaeger, Helen Jaeger, Anthony Rausa and Ida Rausa.
Mr. Guy W. Calissi, attorney for the defendant Borough of Dumont.
WAESCHE, J.S.C.
This is a suit in lieu of a prerogative writ to test the validity of an amendment to the zoning ordinance of the Borough of Dumont. The zoning ordinance of Dumont prohibits trade or business in any district zoned for residential use. Block 197 on the assessment map of the Borough of Dumont is in an area zoned for residential use, and Block 197 itself was originally zoned for residential use. The amendment to the zoning ordinance here under review changed Block 197 from a residential district to a business district. The zoning ordinance permits trade and commerce to be carried on in a business district.
*30 Knickerbocker Road is a county highway running north and south through Cresskill and Demarest along the easterly edge of Dumont. The west side of Knickerbocker Road is the east boundary line of Dumont. Massachusetts Avenue commences in Demarest on the west side of Knickerbocker Road, and runs in a westerly direction into Haworth along the northerly edge of Dumont. The south side of Massachusetts Avenue is the north boundary line of Dumont. DeLong Avenue commences in Dumont on the west side of Knickerbocker Road, and runs in a westerly direction through Dumont. DeLong Avenue is one block south of Massachusetts Avenue and parallel thereto. Franklin Street lies one block west of Knickerbocker Road and is parallel thereto. Franklin Street intersects DeLong Avenue in Dumont, and intersects Massachusetts Avenue in Haworth.
The only property affected by the ordinance here under review, i.e., Block 197, is bounded on the north by Massachusetts Avenue, on the east by Knickerbocker Road, on the south by DeLong Avenue, and on the west by Franklin Street. This block is in the northeast corner of Dumont. It is approximately 787 feet long on Knickerbocker Road, and 200 feet wide on Massachusetts Avenue.
Cresskill and part of Demarest lie along the easterly border of Dumont. The boundary line between Cresskill and Demarest intersects the easterly boundary line of Dumont at about the middle of Block 197 where it fronts on Knickerbocker Road. Haworth and part of Demarest lie along the northerly border of Dumont. The boundary line between Haworth and Demarest intersects the northerly boundary line of Dumont at about the middle of Block 197 where it fronts on Massachusetts Avenue. Hence, Block 197 is bounded on the north by the Boroughs of Haworth and Demarest, and on the east by the Boroughs of Cresskill and Demarest.
The plaintiffs are the Boroughs of Haworth, Cresskill, and Demarest, and several individual property owners. The plaintiffs Robert and June Austin own a one-family residence located in Demarest on the easterly side of Knickerbocker *31 Road, directly across the street from Block 197. The plaintiff Frank P. Ryer owns lot 20, Block 186, on the current assessment map of Cresskill. This property has a frontage of 75 feet on the easterly side of Knickerbocker Road, approximately 500 feet south of Block 197. The plaintiffs Robert and Helen Jaeger own lots 11 and 12, Block 157 on the current assessment map of Dumont. The plaintiffs Anthony and Ida Rausa own lot 31, Block 110, on the current assessment map of Dumont. The plaintiffs William and Marjorie Wendland own lots 28 to 32, inclusive, in the aforesaid Block 197. These five lots have a frontage of 85 feet on the easterly side of Franklin Street in Dumont, and a depth of 100 feet.
The Northern Railroad runs in a north and south direction through Cresskill and Demarest. The West Shore Railroad runs in a north and south direction through Dumont and Haworth. These two railroads and several bus lines provide convenient and rapid transportation to New York City, Jersey City, Newark, Hackensack and many other communities in the metropolitan area.
Cresskill is zoned almost exclusively for single-family residences. The property in Cresskill along Knickerbocker Road, opposite Block 197, is zoned for single-family residences, and is being used exclusively for that purpose. There are no multiple-family districts, and there are no industrial districts in Cresskill. A small section in the center of the borough, by the Northern Railroad Station, is the only area zoned for business use.
Demarest is zoned almost exclusively for single-family residences. The property in Demarest along Knickerbocker Road is zoned for single-family residences, and is being used exclusively for that purpose. A small area in the center of Demarest, by the Northern Railroad station, is the only business zone. Industry is entirely prohibited.
Haworth is zoned almost exclusively for single-family residences. The land along Massachusetts Avenue is zoned for residential purposes. It is all vacant land. Multiple-family *32 residences and industry are prohibited in Haworth. A small area in the center of the borough, by the West Shore Railroad station, is the only area zoned for business use.
To a very large extent, the property in the Borough of Dumont is limited and restricted to residential use by the borough's zoning ordinance. A few small strips along the West Shore Railroad right-of-way are zoned for industry. The northwest corner of the borough and several other small areas in different parts of the borough are zoned for business. The rest is zoned for residential use. The area in Dumont extending west and south from Block 197 for approximately one-half mile is zoned for residential use, except the southwest corner of DeLong Avenue and Knickerbocker Road. This corner property, consisting of a frontage of 80 feet on Knickerbocker Road and a depth of 200 feet on DeLong Avenue, was rezoned from residential to business use by an amendment to the zoning ordinance. In my opinion it is obviously "spot zoning" and illegal. The only other property actually being used for business anywhere within approximately one-half mile of Block 197 is the southeast corner of Grant Avenue and Knickerbocker Road in Cresskill, where there is a gasoline service station and a tavern; and on Grant Avenue, in Cresskill, about 400 feet east of Knickerbocker Road, where there is a construction storage yard. These are non-conforming uses in a residential zone, and are about one-third of a mile from Block 197.
In all the four boroughs there are between 6,000 and 7,000 dwelling units. Most of the dwellings are one-family residences. The new developments in Dumont, Haworth, Demarest, and Cresskill, within a half-mile of Block 197, consist of one-family residences.
The business district in Haworth is about 1.1 miles from Block 197. The business district in Demarest is less than a mile, about 0.86 of a mile, from the premises in question. The business district in Cresskill is about one mile away. The nearest business district in Dumont is about one-half mile from Block 197, and the main business district in Dumont is about three-quarters of a mile.
*33 A valid zoning ordinance limits and restricts to specified districts land and buildings according to the nature and extent of their use. R.S. 40:55-30 et seq., as amended L. 1948, c. 305. Such ordinances, therefore, materially affect the rights of an owner in the use of his property. Any amendment of a zoning ordinance which changes the limitations or restrictions on the use of property likewise affects the rights of the owner in its use. The repeal of any provision of a zoning ordinance which limits or restricts the use of property also affects the rights of the owner to the use thereof. Consequently, no proper consideration of the legality of the provisions of a zoning ordinance, or an amendment, or a repeal thereof, can be undertaken without full knowledge of the rights of a property owner. Therefore, an examination of those rights should be the first step in the consideration of the legality of the ordinance here under review.
The Declaration of Independence affirms that "liberty" is an unalienable right, and that government is instituted to secure this right, among other rights. Article I, paragraph 1, of New Jersey's Constitution of 1947 states that the right to acquire, and possess property is a natural and unalienable right.
In the case of Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 18, 62 L.Ed. 149 (1917), the United States Supreme Court said:
"Property is more than the mere thing which a person owns. It is elementary that it includes the right to acquire, use, and dispose of it. The Constitution protects these essential attributes of property."
The United States Supreme Court also asserted this principle of law in the case of Terrace v. Thompson, 263 U.S. 197, 44 S.Ct. 15, 68 L.Ed. 255 (1923). In the case of City of Knoxville v. Knoxville Water Co., 212 U.S. 1, 29 S.Ct. 148, 154, 53 L.Ed. 371 (1908), the court observed:
"Our social system rests largely upon the sanctity of private property."
*34 In the case of 2700 Irving Park Building Corp. v. City of Chicago, 395 Ill. 138, 69 N.E.2d 827, 832 (1946), the Supreme Court of Illinois said:
"The right of every owner of property to use it in his own way and for his own purposes existed before the adoption of the constitution, and is guaranteed by that instrument."
The Supreme Court of Illinois said in the case of State Bank & Trust Co. v. Village of Wilmette, 358 Ill. 311, 193 N.E. 131, 133, 96 A.L.R. 1327 (1934),
"The privilege of every citizen to use his property according to his own will is both a liberty and a property right. Liberty includes not only freedom from servitude and restraint, but also the right of every man to be free in the use of his powers and faculties to pursue such occupation or business as he may choose and to use his property in his own way and for his own purposes, subject only to the restraint necessary to secure the common welfare."
The case of Phipps v. City of Chicago, 339 Ill. 315, 171 N.E. 289 (Sup. Ct. 1930) enunciated the same doctrine.
In the case of Cowan v. City of Buffalo, 247 App. Div. 591, 288 N.Y.S. 239, 242 (App. Div. 1936), the court said:
"The right to use and enjoy one's property is safeguarded by both the Federal and State Constitutions, and any law which unjustly interferes therewith deprives the owner of its enjoyment, and is as much a violation of the fundamental law of the land as the actual physical taking of the property would be."
In the case of General Outdoor Advertising Co., Inc. v. Department of Public Works, 289 Mass. 149, 193 N.E. 799, 815 (Sup. Jud. Ct. 1935), the court held:
"The right to own land and to use it according to the owner's conception of profit in the main is a part of the liberty secured to the individual under the Constitution."
Our New Jersey Supreme Court held:
"The right to deal with one's property as the owner chooses, so long as the use harms nobody, is a natural right and one guaranteed by our state and federal Constitutions." Reimer v. Dallas, Mayor, 129 A. 390, 391 (Sup. Ct. 1925) (not officially reported).
*35 In the case of Ignaciunas v. Risley, 98 N.J.L. 712 (Sup. Ct. 1922), affirmed 99 N.J.L. 389 (E. & A. 1924), the court said:
"The right to acquire property, to own it, to deal with it, and to use it, as the owner chooses, so long as the use harms nobody, is a natural right. This does not owe its origin to Constitutions. It existed before them. * * * It is however, a right guaranteed by our Constitutions. * * * With the right of ownership and possession goes the right to use, enjoy, and dispose of the property owned. The substantial value of property lies in its use. If the right of use be denied, the value of the property is lessened or destroyed. A law which forbids a certain use of property deprives it of an essential attribute. The result in effect is a proscription of its ownership."
In the case of H. Krumgold & Sons v. Jersey City, 102 N.J.L. 170 (E. & A. 1925), the court said:
"A Legislature cannot confer upon a municipality any power the exercise of which will deprive one of the rights guaranteed him by the Constitution. Every owner of property has guaranteed to him the right of holding, using, enjoying, and disposing of his property. It is true that every owner holds his property subject to the implied condition that it will not be used to the injury of others. Within proper limits, his use thereof will be controlled for the promotion of the safety, health, morals, or general welfare of the community."
Although, in accordance with the basic law, a property owner has the right to use and enjoy his property as he desires, nevertheless, he may not use it so as to cause injury to the property of another. The law casts upon a property owner the legal duty to forebear from using his property in a manner detrimental to the use and enjoyment of the property of another owner, or inimical to the public at large. This is a necessary correlative duty to the right to use property. Without this duty, the right itself could not exist.
The United States Supreme Court said, in the case of Jacobson v. Commonwealth of Massachusetts, 197 U.S. 11, 26, 25 S.Ct. 358, 361, 49 L.Ed. 643 (1905):
*36 "But the liberty secured by the Constitution of the United States to every person within its jurisdiction does not import an absolute right in each person to be, at all times and in all circumstances, wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good. On any other basis organized society could not exist with safety to its members. Society based on the rule that each one is a law unto himself would soon be confronted with disorder and anarchy. Real liberty for all could not exist under the operation of a principle which recognizes the right of each individual person to use his own, whether in respect of his person or his property, regardless of the injury that may be done to others."
In an opinion by the Chief Justice, the Supreme Court of Massachusetts said in the case of Commonwealth v. Alger, 7 Cush. 53, 84 (1851):
"We think it is a settled principle, growing out of the nature of well ordered civil society, that every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property in this commonwealth is * * * held subject to those general regulations, which are necessary to the common good and general welfare. Rights of property, like all other social and conventional rights, are subject to such reasonable limitations in their enjoyment, as shall prevent them from being injurious, and to such reasonable restraints and regulations established by law, as the legislature, under the governing and controlling power vested in them by the constitution, may think necessary and expedient."
The foregoing opinion of the Massachusetts Supreme Court was quoted with approval by our New Jersey Supreme Court in the case of Mansfield and Swett, Inc., v. Town of West Orange, 120 N.J.L. 145 (1938). In that case our Supreme Court also said:
"The genius of organized government is the subordination of individual personal and property rights to the collective interest."
These principles regarding the right to the use of property are expressed in 11 Am. Jur., Constitutional Law, p. 977, sec. 250, in language as follows:
*37 "Not only is it one of the objects of government to impose that degree of restraint on individual action which is required for the reasonable enjoyment of all in their respective rights, but furthermore it is the duty of each citizen to use his property and exercise his rights and privileges with due regard to the personal and property rights of others. This duty is the first and most important obligation entering into the social compact, although it involves restrictions upon the so-called natural rights of individuals."
The United States Supreme Court, in the case of Camfield v. United States, 167 U.S. 518, 17 S.Ct. 864, 866, 42 L.Ed. 260 (1896), stated the law as follows:
"There is no doubt of the general proposition that a man may do what he will with his own, but this right is subordinate to another, which finds expression in the familiar maxim: Sic Utere tuo ut alienum non laedas. His right to erect what he pleases upon his own land will not justify him in maintaining a nuisance, or in carrying on a business or trade that is offensive to his neighbors. Ever since Aldred's Case, 9 Coke 48, it has been the settled law, both of this country and of England, that a man has no right to maintain a structure upon his own land, which by reason of disgusting smells, loud, or unusual noises, thick smoke, noxious vapors, the jarring of machinery, or the unwarrantable collection of flies, renders the occupancy of adjoining property dangerous, intolerable, or even uncomfortable to its tenants. No person maintaining such a nuisance can shelter himself behind the sanctity of private property."
A cause of action arose out of common law for preventing an owner, or one in possession of property, from using it in a manner which wrongfully molested, disturbed, annoyed, or interfered with another owner in the legitimate use of property, or which was noxious to the common good. This is known as the law of nuisance. Blackstone defined nuisance as "anything that worketh hurt, inconvenience or damage." Mayor and Council of Alpine v. Borough of Brewster, 7 N.J. 42 (1951). In the case of Denney v. United States, 185 F.2d 108, 110 (C.C.A. 10, 1950), the court said:
"Although the term `nuisance' defies universal definition, in legal contemplation it may fairly be said to be the unreasonable, unwarranted, or unlawful use of property, which causes injury, damages, hurt, inconvenience, annoyance or discomfort to one in the *38 legitimate enjoyment of his reasonable right of person or property. * * * A nuisance per se is generally defined as an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings."
In the case of Taylor v. City of Cincinnati, 143 Ohio St. 426, 55 N.E.2d 724, 727, 155 A.L.R. 44 (Sup. Ct. 1944), the court said:
"`Nuisance' is a term used to designate the wrongful invasion of a legal right or interest. It comprehends not only the wrongful invasion of the use and enjoyment of property, but also the wrongful invasion of personal legal rights and privileges generally. * * * Nuisance has been defined as a distinct civil wrong, consisting of anything wrongfully done or permitted which interferes with or annoys another in the enjoyment of his legal rights. 3 Cooley on Torts (4th ed.), 85, section 398. * * * Summarized, then, absolute nuisance may be defined as a distinct civil wrong, arising or resulting from the invasion of a legally protected interest, and consisting of an unreasonable interference with the use and enjoyment of the property of another; the doing of anything, or the permitting of anything under one's control or direction to be done without just cause or excuse, the necessary consequence of which interferes with or annoys another in the enjoyment of his legal rights; * * *."
In 39 Am. Jur., Nuisances, p. 280, sec. 2, it is stated that the nuisance doctrine "is so comprehensive that it has been applied to almost all wrongs which have interfered with rights of the citizen in person, property, the enjoyment of his property, or his comfort."
A nuisance may be a private and a public one at the same time. Garfield Box Co. v. Clifton Paper Board Co., 125 N.J.L. 603 (Sup. Ct. 1941).
The Legislature, by statute, may declare, within constitutional limits, acts and uses as nuisances which were not considered so at common law. Mayor and Council of the Borough of Alpine v. Brewster, 7 N.J. 42 (1951). Any act or use of property which is a nuisance at common law, or is such by statute, may be abated since it is detrimental to private property or to the public.
The Constitution provides that the Legislature may authorize municipalities to adopt zoning ordinances limiting *39 and restricting the use of land and buildings, Art IV, Sec. VI, par. 2, Const. of 1947. The primary purpose of a zoning ordinance is to establish and to limit the use of lands and buildings within prescribed areas. In the case of Lumund v. Board of Adjustment of Rutherford, 4 N.J. 577 (1950), the court said:
"Zoning laws are designed to regulate, systematize and stabilize the growth of municipalities."
We also find the courts in other states expressing the purposes of zoning regulations, for instance, as follows:
"I consider that it was the intent of the zoning statute to throw around each community, an arm of protection in the form of a local zoning ordinance, which could insure its inhabitants against radical zoning changes (not necessitated by public demand and by changing conditions of the neighborhood) which would be detrimental to their established living conditions, their property values and the most desirable use of their land." Flower Hill Bldg. Corp. v. Village of Flower Hill, 199 Misc. 344, 100 N.Y.S.2d 903, 907 (Sup. Ct. 1950).
"A zoning ordinance is for the purpose of creating permanent conditions throughout the city or village, and is designed to take care of the problems of the present as well as those of the future, to the extent that they can be reasonably anticipated." Mercer Lumber Companies v. Village of Glencoe, 390 Ill. 138, 60 N.E.2d 913, 917 (Sup. Ct. 1945).
"One of the main purposes of zoning is to stabilize the use of property." Everpure Ice Mfg. Co. v. Board of Appeals of Lawrence, 324 Mass. 433, 86 N.E.2d 906, 909 (Sup. Jud. Ct. 1949).
"The primary purpose of zoning with reference to land use is the preservation in the public interest of certain neighborhoods against uses which are believed to be deleterious to such neighborhoods." Circle Lounge & Grille v. Board of Appeal of Boston, 324 Mass. 427, 86 N.E.2d 920, 923 (Sup. Ct. 1949).
"One of the essential purposes of zoning regulations is to stabilize property uses." Abbadessa v. Board of Zoning Appeals, 134 Conn. 28, 54 A.2d 675, 678 (Sup. Ct. 1947).
"It has long been recognized that one of the purposes of zoning is to `stabilize the uses of land' and `furnish a protection to residential neighborhoods which will cause them to maintain themselves in a decent and sanitary way for a longer time than they otherwise would. * * * By this process obsolescence is greatly retarded.'" Lewis v. District of Columbia, 89 U.S. App. D.C. 72, 190 F.2d 25, 28 (D. Cir. 1951).
*40 In the case of Coppage v. State of Kansas, 236 U.S. 1, 19, 35 S.Ct. 240, 245, 59 L.Ed. 441, 448 (1914), United States Supreme Court said:
"The mere restriction of liberty or of property rights cannot of itself be denominated `public welfare,' and treated as a legitimate object of the police power; for such restriction is the very thing that is inhibited by the amendment."
And in the case of Delawanna Iron and Metal Co. v. Albrecht, 9 N.J. 424 (1952), the court said: "The law will not tolerate an invasion of the right of property under the guise of a police regulation in the professed interest of the public health or safety when it is manifest that such was not the object of the regulation."
Zoning regulations must tend to promote the health, morals, or general welfare, R.S. 40:55-32. In the case of Delawanna Iron and Metal Co. v. Albrecht, supra, the court said:
"It is fundamental that there be a substantial relation between the restraint put upon the use of the lands and the public health, safety, morals, or the general good and welfare in one or more of the particulars involved in the exercise of the constitutional and statutory use-zoning process, and that the regulation be not discriminative; otherwise, there would be an unwarranted intrusion on the basic right of private property."
See also Brandon v. Board of Com'rs of Town of Montclair, 124 N.J.L. 135 (Sup. Ct. 1940), affirmed 125 N.J.L. 367 (E. & A. 1940); Oliva v. City of Garfield, 1 N.J. 184 (1948).
Zoning ordinances can only prohibit a use which would be harmful to other property. And, in order to be valid, zoning restrictions and limitations must have a tendency to promote the general welfare. That is to say, zoning ordinances must promote the general welfare by prohibiting, in particular areas, uses which would be detrimental to the full enjoyment of the established use for property in that area. The real object, however, of promoting the general welfare by zoning ordinances is to protect *41 the private use and enjoyment of property, and to promote the welfare of the individual property owner. In other words, promoting the general welfare is a means of protecting private property. Therefore, a valid zoning ordinance, in legal effect, determines that a use which is prohibited by the ordinance in a particular area is both a private and a public nuisance in that area. In the case of Yaffe v. City of Ft. Smith, 178 Ark. 406, 10 S.W.2d 886, 889 (Ark. Sup. Ct. 1928), the court said:
"The maxim, `use your own property so as not to injure another,' is peculiarly applicable in nuisance cases."
The benefits to private property which accrue from a valid zoning ordinance are vested rights. In the case of Pearsall v. Great Northern Railway Company, 161 U.S. 646, 16 S.Ct. 705, 40 L.Ed. 838 (1896), the court said:
"A `vested right' is defined by Fearne, in his work upon Contingent Remainders, as `an immediate, fixed right of present or future enjoyment'; and by Chancellor Kent as `an immediate right of present enjoyment, or a present fixed right of future enjoyment.' 4 Kent, Comm. 202. It is said by Mr. Justice Cooley that `right are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest.'"
The Supreme Court of New Jersey said in the case of Presbytery of Jersey City v. Trustees of First Presbyterian Church, 80 N.J.L. 572, 577 (Sup. Ct. 1910),
"Rights are vested when the right of enjoyment, present or prospective, has become the property of some particular person or persons as a present interest."
A statement pertinent to the question here involved concerning vested rights, is found in 11 Am. Jur., Constitutional Law, p. 1199, sec. 370, as follows:
"As applied to the vested rights which are secured by constitutional guaranties from infringement or impairment except under *42 special circumstances, the term is not to be restricted to any narrow or technical meaning applicable to these words in the law of real property. The words are used as implying interests which it is proper for the state to recognize and protect and of which the individual could not be deprived arbitrarily without injustice."
In 11 Am. Jur., Constitutional Law, p. 1200, sec. 371, it is stated:
"Vested rights may be created by the common law, by statute, or by contract. No matter how created, they are entitled to the same protection. The mere fact that the enactment of a statute may have been dictated by public policy does not preclude the acquisition of vested rights thereunder."
In the case of Yanow v. Seven Oaks Park, 15 N.J. Super. 73 (Ch. Div. 1951), the court held that zoning restrictions on the use of property are rights of present enjoyment and also of future enjoyment. The court also held that once a district is zoned for the erection and use of one-family houses it should continue as such. In the case of Tzeses v. Board of Trustees of Village of South Orange, 22 N.J. Super. 45 (App. Div. 1952), the court said:
"The courts should not lend themselves to impairment of established residential areas."
In the case of De Bartolo v. Village of Oak Park, 396 Ill. 404, 71 N.E.2d 693, 696 (Sup. Ct. 1947), the court said:
"When a general zoning ordinance is passed, those who buy property in zoned districts have the right to rely upon the rule of law that the classification made in the ordinance will not be changed unless the change will be required for the public good."
Once a municipality adopts a valid zoning ordinance prohibiting a particular use in an established use area, the general public has a right to rely upon the provisions of the ordinance. The restriction is for the benefit of the public health, morals and welfare, which includes all those of the public who are benefited by the restriction. The public health, morals and welfare are not limited by the boundaries *43 of any particular zoning district, nor even by the boundaries of the municipality adopting the ordinance. Property outside the established use area, and even property outside the municipality, if benefited by the prohibited use, acquires a vested right to any benefits accruing from the restriction. It is almost inevitable that an adjoining municipality will be affected in some degree by the zoning regulations along its border adopted by its next door neighbor. Zoning regulations must be in accordance with a comprehensive plan, and they must be made with reasonable consideration to the peculiar suitability of the land for a particular use, and with a view of conserving the value of property and encouraging the most appropriate use thereof. R.S. 40:55-32; Cassinari v. City of Union City, 1 N.J. Super. 219 (App. Div. 1949); Collins v. Board of Adjustment of Margate City, 3 N.J. 200 (1949). Hence, it becomes a legal requirement that the restrictions and regulations in a zoning ordinance must be made with reasonable consideration to the character of the land and also to the character of the neighborhood lying along the border of the municipality adopting the ordinance. In the case of Duffcon Concrete Products v. Borough of Cresskill, 1 N.J. 509 (1949), the court said:
"What may be the most appropriate use of any particular property depends not only on all the conditions, physical, economic and social, prevailing within the municipality and its needs, present and reasonably prospective, but also on the nature of the entire region in which the municipality is located and the use to which the land in that region has been or may be put most advantageously."
In the case of DeBenedetti v. Township of River Vale, 21 N.J. Super. 430 (App. Div. 1952), the court said:
"It is, accordingly, necessary to obtain a broad perspective of the municipality and the region in which it is located."
In the case sub judice, the one block, i.e., Block 197, which was rezoned from a residential use to a business use by the ordinance here under review and the area surrounding that block in Dumont, Cresskill, Demarest, and Haworth, *44 were zoned for residential use. In reliance upon the residential character of the area, single-family dwellings were erected in that area in all four municipalities: Dumont, Cresskill, Demarest, and Haworth. These property owners have a vested right to the benefits from the zoning restrictions against a business use, subject only to a proper exercise of the police power.
In my opinion the change effected in the zoning restrictions by the ordinance here under review, to wit, to permit a business use in Block 197, does not promote the public welfare; it is not in accordance with any comprehensive plan; it does not promote any of the statutory purposes relating to zoning. A business conducted in Block 197 would constitute both a public and a private nuisance per se.
The statute provides that a municipality may sue and be sued, R.S. 40:43-1. The statute authorizes municipalities to adopt zoning ordinances for the public good. The municipality is charged with the duty of enforcing those ordinances in the public interest, Garrou v. Teaneck Tryon Co., 11 N.J. 294 (1953). Certainly, a municipality has the power to bring suit against any one for the purpose of protecting the public's interests which the municipality itself is endeavoring to promote, and which it is in duty bound to promote. McQuillin, Municipal Corporations (2nd ed.), sec. 2650, states that a municipality may sue and be sued in the same manner as natural persons.
For the reasons aforesaid, the ordinance here under review should be set aside.