530 So.2d 940 (1988)
BATTAGLIA FRUIT CO., Etc., Petitioner,
v.
The CITY OF MAITLAND, Etc., et al., Respondents.
No. 87-1296.
District Court of Appeal of Florida, Fifth District.
July 21, 1988.
Rehearings Denied September 15, 1988.
*941 Scott E. Wilt of Maguire, Voorhis & Wells, P.A., Orlando, for petitioner.
Lawrence M. Watson of Carlton, Fields, Emmanuel, Smith & Cutler, P.A., Orlando, for respondent Mark Cooper and Maitland Assoc. of Homeowners, Inc.
Joseph A. Frein of Broad and Cassel, Maitland and Paul R. Gougelman, III of Reinman, Harrell, Silberhorn & Graham, Melbourne, for respondent City of Maitland.
ORFINGER, Judge.
The Orange County Board of County Commissioners approved Battaglia Fruit Company's application for rezoning of a 33.3 acre tract after finding that the proposed rezoning complied with the County's Growth Management Policy. A petition for writ of certiorari was filed by the City of Maitland in the Circuit Court, Ninth Judicial Circuit, and a similar petition for writ of certiorari was filed in the circuit court by Mark Cooper and the Maitland Association of Homeowners, Inc.[1] These petitions were subsequently consolidated. The circuit court granted the consolidated petitions, and quashed the county commissioners' decision. Battaglia Fruit Company seeks certiorari review of the circuit court order.
Battaglia's property is located in an unincorporated area of Orange County, near the City of Maitland. Battaglia's application requested a change in zoning from low density residential to a planned development that would allow professional offices and multifamily residential units to be built on the property.
On October 21, 1985, a public hearing on Battaglia's application was held before the Board of County Commissioners.[2] At that hearing, a motion was made and seconded to approve the application for rezoning; a 2-2 tie vote resulted. On October 28, 1985, the hearing was continued and the application was approved by a 3-2 vote. In their petitions for writ of certiorari filed with the circuit court, the City of Maitland and Maitland Association of Homeowners, Inc. argued that the initial tie vote should have constituted a binding denial of Battaglia's application. It was also argued that the rezoning was not consistent with the county's growth management policy and future land use policy guide map. Battaglia filed several motions to dismiss, which raised various grounds, including the arguments that Maitland Association's petition did not timely invoke the circuit court's jurisdiction, and that the City of Maitland lacked standing to file a petition for writ of certiorari in the circuit court. The circuit court refused to dismiss the petitions for writ of certiorari, ruling that petitioners demonstrated a preliminary basis for relief.
In granting the consolidated petitions, the circuit court held that petitioners' due process rights had been violated by the *942 county commissioners' failure to abide by their initial tie vote on October 21, 1985, which under proper parliamentary procedure would have defeated the motion to approve Battaglia's application. Under the Orange County Code, an unsuccessful applicant must wait nine months before applying for another hearing concerning the same property; the circuit court reasoned that the 3-2 vote on October 28, 1985, violated this provision. The circuit court also held that the evidence before the county commissioners was insufficient to support their determination that the rezoning was consistent with the county's growth management policy.
In the petition for writ of certiorari filed with this court, Battaglia once again alleges that the petition filed by Maitland Association was untimely, and that the City of Maitland lacked standing to file a petition for writ of certiorari. Battaglia also argues that the circuit court departed from the essential requirements of law in construing the tie vote as a binding denial of the rezoning application.
Turning first to the controversy surrounding the county commissioners' initial tie vote, the Orange County Code does not contain a provision that a tie vote constitutes a final decision in a zoning matter. The circuit court stated that in the absence of a formal rule, a deliberative body must follow generally accepted rules of parliamentary procedure. We do not agree. Parliamentary rules not adopted as part of a governmental body's organic law may be waived or disregarded, and courts will not enforce their observance. See 59 Am.Jur.2d Parliamentary Law, § 4 (1987). The failure of the county commissioners to observe a general rule of parliamentary procedure did not violate any party's procedural due process rights.
We now turn to Battaglia's claim that Maitland Association failed to timely invoke the jurisdiction of the circuit court. The Orange County Zoning Code was established by a special act of the Florida Legislature. See Chapter 63-1716, Laws of Florida, Special Acts of 1963. Section 37-16 of the Code states that any person aggrieved by a decision of the county commissioners may file a petition for writ of certiorari in the Circuit Court of Orange County in the manner prescribed by the Florida appellate rules. Section 37-16 also states that a notice of intent to file a petition for writ of certiorari must be filed in the circuit court within ten days after rendition of the county commissioners' decision. The petition and transcript shall be filed in the circuit court within thirty days after rendition of the county commissioners' decision, except the circuit court may extend the time for filing the petition and transcript for good cause shown.
The county commissioners' decision was rendered on October 28, 1985. Maitland Association's notice of intent was filed on November 8, 1985, eleven days later. The petition was filed on December 2, 1985, 35 days after rendition of the county commissioners' decision. Maitland Association alleged that an employee of the clerk's office in Orange County represented that the decision of the county commissioners had not been reduced to writing and had not been filed. The circuit court, in denying Battaglia's motion to dismiss, stated that "The delay in filing the writ [sic] was occasioned in part by an agent of defendant [the Board of County Commissioners]."
Under the special act establishing the zoning code, the circuit court is not authorized to extend the 10 day period for the filing of the notice of intent. Maitland Association's notice of intent was untimely because it was filed one day late. Whereas the circuit court disregarded this infraction, we are not disposed to take such liberties with a procedural requirement enacted by the legislature. See Buck v. City of Hallandale, 85 So.2d 825 (Fla. 1956). Maitland Association's petition for certiorari was also untimely. The remedy of statutory certiorari is independent and cumulative to common law certiorari. Common law certiorari is available if a statutory remedy fails. See Grady v. Lee County, 458 So.2d 1211 (Fla. 2d DCA 1984); G-W Development Corp. v. Village of North Palm Beach Zoning Board of Adjustment, 317 So.2d 828 (Fla. 4th DCA 1975). *943 However, Maitland Association did not file its petition for certiorari within the 30 day jurisdictional period established by the special act nor within the identical jurisdictional period for common law certiorari by Florida Rule of Appellate Procedure 9.100(c).[3] The circuit court departed from the essential requirements of law by not dismissing the petition for certiorari filed by Maitland Association.
We now address Battaglia's claim that the City of Maitland lacked standing to file a petition for certiorari. Orange County gave the City of Maitland notice of the hearings concerning Battaglia's application for rezoning. At these hearings, Maitland residents who lived in subdivisions near Battaglia's property voiced opposition, but no representative of the City of Maitland appeared or spoke against the application. The fact that the City was given notice of the county hearings would not automatically establish standing. See F & R Builders, Inc. v. Durant, 390 So.2d 784 (Fla. 3d DCA 1980). See also Renard v. Dade County, 261 So.2d 832, 837 (Fla. 1972).
The circuit court's certiorari review in this case was limited to the record below. See § 37-16, Orange County Code (Circuit court shall not conduct a trial de novo). The record before the circuit court was composed of the transcripts of the county hearings and exhibits considered by the county agencies and commission. The record before the circuit court did not demonstrate that the City of Maitland was a party aggrieved by the decision of the Board of County Commissioners, because the City never appeared or presented any evidence or objection. In its petition filed with the circuit court, the City of Maitland listed several interests that would be adversely affected by the planned development to demonstrate that it had a special interest exceeding the general interest of all citizens in the community. See generally Citizens Growth Management Coalition v. West Palm Beach, 450 So.2d 204, 208 (Fla. 1984); Renard, supra. However, the City did not allege and prove the existence of those interests before the county agencies and commission considering Battaglia's application, so they were not part of the record before the circuit court. Therefore, the circuit court departed from the essential requirements of law in not dismissing the City's petition for lack of standing.[4]
Whatever objections the City of Maitland had to the proposed rezoning were never made to the agency which had the power to grant or deny the rezoning request. Its complaint that the planned development would burden its municipal services and require it to furnish additional police and fire protection was never presented to the Board of County Commissioners and there is no such evidence in the administrative record.[5] The first time any such allegation was made was in its petition to the circuit court, where it was made too late. In a certiorari proceeding the circuit court has no zoning powers but can only review the administrative record of the agency that has such powers. The dissent is in error when it says that the circuit court may hear an objection de novo. Not only does the legislative act which gives Orange County its zoning powers specifically prohibit de novo court review, but the law generally limits the authority of a reviewing court to the record made at the zoning hearing.
*944 The administrative record in this case showed only that the property in question abuts Maitland's boundary. However, the City's proximity to the property would not in and of itself establish a legal interest adversely affected by the rezoning.
In reviewing the action of a county agency, the circuit court is limited to a determination of whether the agency provided procedural due process, observed the essential requirements of law and whether its decision is supported by competent substantial evidence. City of Deerfield Beach v. Vaillant, 399 So.2d 1045 (Fla. 4th DCA 1981); affirmed, 419 So.2d 624 (Fla. 1982); BML Investments v. City of Casselberry, 476 So.2d 713, 715 (Fla. 5th DCA 1985), review denied, 486 So.2d 595 (Fla. 1986).
The limitation on the review powers of the circuit court were clearly stated in Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082, 1091 (Fla. 1978), where the court held that:
The circuit court, therefore, transcended the scope of its certiorari review by substituting its judgment for that of the local zoning authority. Because zoning or rezoning is the function of the appropriate zoning authority and not the courts, the circuit court was not empowered to disapprove the finding of the Board unless the record was devoid of substantial competent evidence to support the Board's decision. [Footnote omitted].
The record before the Board of County Commissioners contains competent substantial evidence to support the county's actions. Perhaps the result would have been different had the City presented its evidence to that body, but having failed to do so, it should not have been permitted to present de novo evidence to the circuit court which had authority only to review what had been presented below.
The circuit court order granting the consolidated petitions for certiorari filed by Maitland Association and the City of Maitland is quashed.
WRIT ISSUED.
DAUKSCH, J., concurs.
SHARP, C.J., dissents with opinion.
SHARP, Chief Judge, dissenting.
I disagree that the City of Maitland failed to establish in this record sufficient standing to challenge the rezoning of petitioner's land; and I do not think the Maitland Association of Homeowners, Inc. should be foreclosed from seeking review under the Orange County Zoning Code.[1] Since one or both of the respondents properly sought review of the rezoning in the circuit court, I reach the merits of the rezoning issue, and conclude that the trial court should be affirmed. The rezoning was contrary to the Orange County Comprehensive Zoning Plan, and the County Commission did not follow the proper procedures to amend the zoning plan.

I. STANDING: CITY OF MAITLAND
Pursuant to the Orange County Zoning Act, "Any person aggrieved by the board of county commissioner's decision ... may file a petition for writ of certiorari ... in the circuit court of Orange County... ." (Ch. 71-795 sec. 16). This language is similar to the provisions in section 163.3215(1), Florida Statutes (1985). However, the express provision, which defines an "aggrieved party" as:
[A]ny person or local government which will suffer an adverse effect to an interest protected or furthered by a local government comprehensive plan, including interests related to health and safety, police and fire protection service systems, densities or intensities of development, transportation facilities, health care facilities, equipment or services, or environmental or natural resources . ..[2]
became effective shortly after Battaglia filed its application for rezoning, and therefore is not strictly applicable to this case.
*945 Nevertheless, it appears to me the statutory language is primarily derived from case law which clearly can be applied to this case. To challenge a rezoning decision, it is no longer necessary to prove special damages as was required in nuisance suits, one of the sources of zoning law. It is only necessary to establish that some kind of legally protected interest of the challenging party will be potentially affected by the decision. Renard v. Dade County, 261 So.2d 832 (Fla. 1972). This interest must exceed the general interest shared by all members of the community. Citizens Growth Management Coalition v. West Palm Beach, 450 So.2d 204 (Fla. 1984). Standing is generally established by considerations such as the proximity of the rezoned land to the challenger's lands, the character of the neighborhood and the anticipated effect on it of the rezoning. Renard at 837. Where spot-zoning is the basic challenge to the rezoning, proximate and adjacent landowners and even those a mile or more away, if affected by the new zoning, have standing to contest the issue. See Exchange Investments, Inc. v. Alachua County, 481 So.2d 1223 (Fla. 1st DCA 1985); SW Ranches Home Owners Association, Inc. v. County of Broward, 502 So.2d 931 (Fla. 4th DCA), rev. den., 511 So.2d 999 (Fla. 1987); Albright v. Hensley, 492 So.2d 852 (Fla. 5th DCA 1986); Wager v. City of Green Cove Springs, 261 So.2d 827 (Fla. 1972); "Standing to Appeal Zoning Determinations: The `Aggrieved Person' Requirement," 64 Mich.L.Rev. 1070, 1079 (1965-1966). Courts also recognize that city and county boundaries have become irrelevant in determining standing, as a local zoning decision may have impact far beyond the entity's borders. Annot. 69 A.L.R.3d 805; Anderson, 4 American Law of Zoning 3d (1986) § 24.01.
It is also clear that the better view is that cities, counties, or other local governmental agencies may be "aggrieved persons" within the scope of applicable statutes permitting appeals from zoning decisions.[3] The court in Ruegg v. Board of County Commissioners, Clackamas County, 32 Or. App. 77, 573 P.2d 740 (1978), held that a neighboring city had standing to contest the county's rezoning of lands in the county because the rezoning undermined the city's planning efforts and would adversely affect its downtown development. It said:
In view of the interrelationship between the county's and the city's land use planning, the proximity of the city's boundaries to the subject property, and the trend in the law to extend standing in land use cases to persons other than those who own contiguous property, [citations omitted] the city should have been permitted to appear as a party in this proceeding.
Ruegg, 573 P.2d at 742. Neighboring cities and counties such as Maitland and Orange County, are required to cooperate in regional planning, both under the Special Act and state law.[4] In a reverse situation, the County of Pinellas was allowed to challenge rezoning of lands in the City of Gulfport.[5]
The majority opinion takes the view that because Maitland did not appear in the zoning proceedings before the county commissioners and other county bodies, it failed to establish its standing or right to challenge the zoning decision in the circuit court. I submit that the special zoning act authorizing certiorari review of zoning decisions does not limit such right of review solely to persons who appeared or were parties in the rezoning process. The interpretation of "aggrieved party" under the Special Act, and under statutory law, means much more than merely a party who attends the administrative proceedings.[6] As discussed above, standing in this context means proximity and affect or impact *946 on a legal interest. Surface Water Management Permit No. 50-01420-S v. Florida Land and Water Adjudicatory Comm., 515 So.2d 1288 (Fla. 4th DCA 1987); rev. den., 525 So.2d 876 (Fla. 1988); Carlos Estates, Inc. v. Dade County, 426 So.2d 1167 (Fla. 3d DCA 1983).
Further, the majority assumes that Maitland had to have appeared in the rezoning proceedings below in order to have established its right of standing, because the method of review in the circuit court is limited to certiorari, and that court (as well as this one) can only consider the record sent to it from the administrative proceedings. I am not convinced that a party seeking to challenge a rezoning decision cannot by proper allegations and proofs in the circuit court, de novo as it were, establish his right to bring that action.[7] In other certiorari proceedings like this one when the standing challenge is raised, courts have resolved this question by examining the "allegations" of the challenger's complaint filed in the case with the court. See Wager, 261 So.2d 827 (Fla. 1972); Exchange Investments.
The allegations in Maitland's petition filed with the circuit court in this cause abundantly established Maitland's standing as an "aggrieved party." Maitland alleged that the rezoning in question would have a material effect on the city, and the abutting lands within the city, because this rezoned thirty-three acres was an enclave surrounded on three sides by the City of Maitland. It also alleged that the planned development would burden Maitland's municipal services, and require it to furnish police and fire protection. It further alleged that the traffic from the development would impact the city and its streets because the rezoned property's sole access was through the downtown area of Maitland. I assume all these matters were proven to the satisfaction of the circuit court which heard this matter, and ruled accordingly. This hearing was apparently not reported.
But even if it is necessary to disregard the allegations of Maitland's petition regarding standing and any proofs it may have offered at the hearing, I submit that the proximity and interrelationship of Maitland to the rezoned property is adequately established by the record before the administrative bodies. Accordingly, Maitland's status as an "aggrieved party" is clear on the certiorari record before us, if anyone chooses to read it. The following is a summary.
The physical location of the rezoned land, surrounded on three sides by Maitland, was repeatedly shown by maps, exhibits and testimony. There was testimony concerning ingress and egress onto Maitland's roads, and the necessity to add turn lanes and lights in order to handle the anticipated traffic impact of the development. It was pointed out that the commercial office building part of the development could only be accessed by Maitland Boulevard, and downtown Maitland.
The county staff recommended against the rezoning because it is inconsistent not only with Orange County's Growth Management Plan, but Maitland's as well. Both Orange County's and Maitland's plans restrict high density commercial development to lands west of I-4; and keep lands east of I-4 where this property is located as low density residential zones. Surrounding the rezoned land are Maitland's low density residential areas. This enclave is the only county land along Maitland Boulevard, East of I-4. All the rest is in Maitland.
Efforts are made by Orange County to coordinate land use planning with cities when they share mutual boundaries. The original zoning on this property was consistent with both entities' plans. This change is not. Nor was any coordination with Maitland undertaken prior to the rezoning.
*947 The county commissioners were aware that Maitland viewed this enclave of county land as land it planned to annex in the future. Commissioner Carter stated at the only evidentiary hearing before the commission that only two months prior to the rezoning proceeding, Orange County officials had met with Maitland's officials and assured them that the enclave would be their "urban expansion area." Maitland told them they wanted the enclave zoned residential. Commissioner Carter stressed that the proposed high density development would adversely impact Maitland and its future planning.

II. TIMELINESS OF THE MAITLAND ASSOCIATION OF HOMEOWNER'S CERTIORARI PETITION
As the majority opinion points out, the Association's certiorari petition was five days late in being filed in the circuit court; and its notice of intent to sue required by section 16, Chapter 71-795 (Orange County Special Act) was one day late. A motion to dismiss was filed raising both grounds, and a hearing was apparently held, although not reported.
In a written order the circuit court denied the motion because it found that the delay in filing was caused in part by the county. At a later reported hearing, the trial judge said he considered the notice and petition timely because:
[T]here was good faith reliance, on behalf of the complainants, of the representations made by an agent of the clerk's office in Orange County that this [the decision] had not been filed, [when it had been filed].
Filing is the critical act which triggers both time periods under section 16. See Kowch v. Board of County Commissioners, 467 So.2d 340 (Fla. 5th DCA 1985).
Clearly, the ordinance gives the circuit court authority to extend the 30-day time period to file the petition, which it did in this case. Although not expressly applicable to the 10-day notice provision, this extension power of the circuit court must, in my view, apply to the notice as well. Of what value is the court's power to extend the longer time period, if the shorter one cannot be extended or ignored as not jurisdictional? See Anderson 4 American Law of Zoning 3d (1986) § 27.24. If a party misses the longer time barrier, he will almost certainly have missed the shorter one.
Further, as in this case, where the court finds that the delays are attributable to the county, some remedy analogous to rule 1.540 should be available to the aggrieved party. See New Washington Heights Community Development Conference v. Department of Community Affairs, 515 So.2d 328 (Fla. 3rd DCA 1987). This extension provision should be employed to give such relief, in these administrative proceedings.

III. MERITS OF THE REZONING ISSUE
The certiorari record (no de novo evidence was presented to the trial court on the merits of the rezoning) establishes the following facts.[8] The Battaglia property involved in this case is a 33.3 acre enclave of Orange County unincorporated land, surrounded on three sides by lands in the City of Maitland. For many years a producing citrus grove, it was burned out by recent winter freezes, and is now essentially vacant. It is the only Orange County property east of I-4 (a major interstate highway) along Maitland Boulevard. All the rest of the property along this boulevard lies within Maitland.
Maitland Boulevard runs along the north of the Battaglia land. It is a four-lane *948 state road which runs through the center of Maitland and crosses I-4 to the west. South of the property, Sandspur Road, a two-lane street serves the residential neighborhoods to the immediate south, east and west of this land.
Along Maitland Boulevard, running east from I-4 to downtown Maitland, commercial usage has not been allowed. There is only low density residential development, except for a church, a school and community center, and one single office professional building, which is set far back from the Boulevard. High density commercial and office building developments have been restricted to areas west of I-4.
The Battaglia land was zoned R-IAA in 1957. This is a single-family, low density category, which permits at the most 4.4 dwelling units per acre. The lands surrounding the Battaglia property are also zoned low density residential. This zoning is consistent with growth management policies and plans of both Maitland and Orange County. Orange County's plan was adopted in 1980, and readopted in August of 1985, pursuant to section 163.3161.[9] Both zoning plans show the Battaglia land as a low density residential area.
Battaglia sought to change the zoning on its 33.3 acres by obtaining county approval of a planned unit development, which combines commercial office space and multifamily apartments. The plan shows 28 acres will be used to construct 240,000 square feet of office space, plus parking. Ingress and egress from the office development will be onto Maitland Boulevard. The *949 traffic will require the addition of lanes to Maitland Boulevard and a traffic signal. The remaining five acres will be used to construct apartments, with a density of ten dwelling units per acre. Access to this portion of the property will be onto Sandspur Road.
The Orange County Development Review Committee, charged with the function of reviewing applications for zoning changes, for consistency with the comprehensive plans,[10] recommended against the Battaglia application. It found the planned unit development (P.U.D.) was inconsistent with Orange County's Growth Management Plan, Maitland's Comprehensive Plan, and that it was incompatible with the surrounding existing residential areas. At the planning and zoning commission level, testimony concerning the proposed development and the anticipated impact on the neighborhood was presented.
The developer's representatives minimized the traffic and other impact the planned unit development would have on Maitland and its residential neighborhoods. Representatives from subdivision associations, encompassing 1,000 residences, spoke against the P.U.D. The meeting was so large it was held at the Maitland City Hall. Some residents pointed out that they opposed any commercial zoning along the Boulevard, fearing a domino effect, and that the area logically should be included in Maitland. Many Maitland residents wanted to have the area used for a city park. Without any finding that the proposed development was consistent with Orange County's Comprehensive Plan, the Planning and Zoning Board approved it, subject to various conditions, including walls and landscaping.
On October 21, 1985, the county commissioners considered the rezoning application. The planning department staff recommended against it because it was inconsistent with Orange County's and Maitland's Growth Management Plans, incompatible with the surrounding and adjacent singlefamily residential development, and because it would set a precedent for allowing commercial development along Maitland Boulevard east of I-4.[11] At this hearing, the developer's attorney and planning witnesses presented the project, and explained how it would not adversely impact Maitland's surrounding residential areas. They argued that professional offices are not incompatible with residential use. In opposition were representatives of more than 1,000 homeowners. They stressed there was commercial use only east of I-4 of on Maitland Boulevard and that it would impact the city's police and fire services, traffic problems, and would lead to more commercial development along Maitland Boulevard to the east of I-4.
The developer argued that putting office buildings along major arterial streets is an element of Orange County's Comprehensive Plan. This is one of 14 general planning principles contained in Orange County's Plan. Maitland is such an arterial street. Therefore, the developer argues the project was in fact "consistent" with Orange County's Growth Management Plan. Other Orange County "policies" of equal standing with this one relied upon by the developer militates against this rezoning. For example, two provide that commercial and industrial uses should not be allowed to encroach on established residential areas. The developer also argued that the land use map which showed the area as residential, was not a part of Orange County's Plan.
It is not clear why the Orange County Board of Commissioners ultimately voted[12] to approve the P.U.D. rezoning. It may have been because of the generalized policy *950 singled out by the developers of putting offices on arterial streets. Or, it may have been a misapprehension on the part of three of the county commissioners that the county plan was so flexible it could be changed in this manner; or that the P.U.D. was so well planned that it was not inconsistent with the comprehensive plan. In any case, I agree with the trial judge that the P.U.D. proposed here is clearly inconsistent with Orange County's Growth Management Plan.
Orange County's special zoning act provides that all development orders shall be "consistent with the growth management policy" (Sec. 37-85). It further defines what is meant by "consistency:"
"Development proposals and development orders should be deemed consistent with the growth management policy if such proposals or orders involving equal or lesser intensity or density than projected by the policy for the area, ensure compatibility with surrounding land uses, generally conform to specific area or neighborhood studies or other development policies adopted from time to time by the board, and conform generally with the overall spirit and intent of the policies of the growth management policy." (emphasis supplied)
(§ 37-85(C)). Since the density and intensity of the P.U.D. is much greater than projected by the current plan, the rezoning is per se inconsistent with Orange County's plan.
Further, it is clear that the future use map adopted by the Board pursuant to section 37-87, which establishes this area as residential, is a vital element of the plan. Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987) (land use color coded map held to be an element of the Dade County Comprehensive Plan). Section 37-87 says the map "is intended to be a visual representation of the goals, objections and policies contained in the growth management policy and of the proposed general distribution location and extent of the uses of land." Without a comprehensive map or plan as a part of its policy, it is doubtful that Orange County would be in compliance with the requirements of the Local Government Comprehensive Planning and Land Development Regulation Act (Ch. 163) § 163.3177. The fourteen generalized planning principles, urged as Orange County's Plan by the developer, would clearly be insufficient. See also, Machado, supra.
Pursuant to both the local act, § 37-87, and the state law, § 163.3231, all development decisions must be consistent with the comprehensive plan. If it is not, then the rezoning change can only be made after the required procedures to change the plan have been followed. § 163.3194(1)(a); 1 Florida Real Property Practice Service, § 3.03 at 37-38; Yokley, 1 Zoning Law and Practice (1978) § 5-6. Admittedly, no effort by Orange County was made in this case to amend its Comprehensive Growth Management Plan. Nor was any effort made by Orange County to coordinate the rezoning with the City of Maitland, despite the mandates of section 163.3161, Chapter 163, and section 37-82, Special Act.
Since the adoption of the Local Government Comprehensive Planning and Land Development Regulation Act, in 1975, (Ch. 163) and its implementation through the required adoption of growth management policies and plans by local governments, the standard of review by courts of zoning decisions has changed dramatically. The prior well established "fairly debatable standard" which accorded the zoning authority a wide range of discretion, [see Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082 (Fla. 1978); Marell v. Hardy, 450 So.2d 1207 (Fla. 4th DCA 1984); Broward County v. Capeletti Bros. Inc., 375 So.2d 313 (Fla. 4th DCA 1979), cert. den., 385 So.2d 755 (Fla. 1980); Shaughnessy v. Metropolitan Dade County, 238 So.2d 466 (Fla. 3d DCA 1970)] has been limited by these new laws. 1 Florida Real Property Practice Service § 1.01.B.3 at 17; Machado. This standard, relied upon in the majority opinion, is no longer applicable when the issue is that the rezoning is inconsistent *951 with a comprehensive plan. Machado. "[A] zoning action not in accordance with a comprehensive plan is ultra vires." Machado at 632. Zoning decisions must now be made within the guidelines and dictates of the comprehensive plans.[13]
In reviewing zoning decisions, a court is charged with the responsibility of determining that the zoning decision is consistent with the comprehensive plan, or that the plan has been duly amended to allow the zoning to be consistent.[14] In so doing, zoning decisions are held by reviewing courts to strict scrutiny when the change is apparently inconsistent with the plan.[15]
This court in City of Cape Canaveral v. Mosher, 467 So.2d 468 (Fla. 5th DCA 1985) held that a zoning change inconsistent with a duly adopted comprehensive plan could not be sustained. Summary judgment for the land owner was affirmed because the city admitted it failed to give the landowners notice of the rezoning, the rezoning was not consistent with the comprehensive plan, and it was not reasonable. Judge Cowart concurring specially said he would have reached the same result simply because the rezoning was inconsistent with the plan, although the rezoning was to be a less intensive use or density. This view was adopted by our sister court in Machado.
Other district courts apparently take the view that if the rezoning is to a lesser intensity or density, the fairly debatable standard applies. In such a case, the zoning entity is not held to a strict scrutiny test regarding consistency with its plan and it is accorded a broader discretion. See Southwest Ranches Homeowners Assn. v. Broward County, 502 So.2d 931 (Fla. 4th DCA), rev. den., 511 So.2d 999 (Fla. 1987); City of Jacksonville Beach v. Grubbs, 461 So.2d 160 (Fla. 1st DCA 1984), rev. den. 469 So.2d 749 (Fla. 1985). However, this case involves rezoning to a greater intensity or density. Thus we need not resolve any area of potential conflict with our decision and those of our sister courts. Under all current Florida district court views, the zoning change in this case is subject to the strict scrutiny test  not the fairly debateable one.
It appears to me that the trial judge correctly applied the existent law and recent controlling decisions to the facts presented in the record before him. His conclusions that the rezoning is inconsistent with the Orange County Comprehensive Growth Management Plan is a fair one and it is more than adequately supported by the record. Frankly, there is almost no basis in this record from which one could conclude that the P.U.D. is "consistent" with the comprehensive plan. See Hall v. Korth, 244 So.2d 766 (Fla. 3d DCA 1971). Since we cannot as a district court grant a second "certiorari review", and second-guess the circuit judges in such cases,[16] we should affirm his decision and deny this petition for writ of certiorari.[17]
NOTES
[1] Respondents Mark Cooper and the Maitland Association of Homeowners, Inc., will be collectively referred to as the "Maitland Association." Petitioner Battaglia Fruit Co. will be referred to as "Battaglia."
[2] The County's Planning and Zoning Commission recommended to the Board of County Commissioners the approval of the planned development, notwithstanding a recommendation to that Commission by the Development Review Committee that the proposal be rejected.
[3] Assuming, without deciding, the power of the legislature to permit the circuit court to extend the time for seeking statutory certiorari But see Article V, Section 2, Florida Constitution, which gives to the supreme court the exclusive power to adopt rules of procedure in all courts, including the time for seeking appellate review), there is nothing in the record to disclose that Maitland Association ever applied for or that the circuit court ever granted an extension of time for filing the petition.
[4] Section 163.3215, Florida Statutes (1985), which authorizes an action for injunctive or other relief to enforce a local comprehensive plan is not applicable as Battaglia filed its application before July 1, 1985. See § 163.3215(3)(a), Fla. Stat. (1985).
[5] On the contrary, there was expert testimony presented to the Board of County Commissioners that the traffic impact of the planned development would be less than if the property were fully developed for residential purposes.
[1] Established by a special act of the Florida Legislature. See Chapter 63-1716, Laws of Florida, Special Acts 1963.
[2] § 163.3215(2), Fla. Stat. (1985), effective July 1, 1985.
[3] Anderson, 4 American Law of Zoning 3d (1986) § 27.20.
[4] § 163.3167, Fla. Stat. (1985); Ord. 37-82 I-II; Borough of Cresskill v. Borough of Dumont, 28 N.J. Super. 26, 100 A.2d 182 (1953); affirmed 15 N.J. 238, 104 A.2d 441 (1954).
[5] Pinellas County v. City of Gulfport, 458 So.2d 436 (Fla. 2d DCA 1984).
[6] Anderson 4 American Law of Zoning 3d (1986) § 27.10.
[7] Note, that, an individual need not, in all cases, be a party to a proceeding to obtain certiorari review so long as he has sufficient interest in the subject matter of the challenged order. See generally State ex rel. Boyles v. Parole and Probation Comm., 436 So.2d 207 (Fla. 1st DCA 1983).
[8] Contrary to statements in the majority opinion, the record before us and the trial court is strictly proper in a certiorari case. It is composed of the administrative hearings and trial court pleadings. The only "de novo" matters are in Maitland's pleadings, in an attempt to establish its standing to appeal. If a hearing was held on those allegations, it was not recorded, and it is not a part of this record. Maitland did not, nor was it permitted to present de novo evidence to the circuit court on the merits of the rezoning issue. In all fairness, if this case must be reversed, it should not be reversed because of any improprieties regarding the certiorari record.
[9] Section 163.3161, Florida Statutes, states:

163.3161 Short title; intent and purpose.  (1) This part shall be known and may be cited as the `Local Government Comprehensive Planning and Land Development Regulation Act.'
(2) In conformity with, and in furtherance of, the purpose of the Florida Environmental Land and Water Management Act of 1972, chapter 380, it is the purpose of this act to utilize and strengthen the existing role, processes, and powers of local governments in the establishment and implementation of comprehensive planning programs to guide and control future development.
(3) It is the intent of this act that its adoption is necessary so that local governments can preserve and enhance present advantages; encourage the most appropriate use of land, water, and resources, consistent with the public interest; overcome present handicaps; and deal effectively with future problems that may result from the use and development of land within their jurisdictions. Through the process of comprehensive planning, it is intended that units of local government can preserve, promote, protect, and improve the public health, safety, comfort, good order, appearance, convenience, law enforcement and fire prevention, and general welfare; prevent the overcrowding of land and avoid undue concentration of population; facilitate the adequate and efficient provision of transportation, water, sewerage, schools, parks, recreational facilities, housing, and other requirements and services; and conserve, develop, utilize, and protect natural resources within their jurisdictions.
(4) It is the intent of this act to encourage and assure cooperation between and among municipalities and counties and to encourage and assure coordination of planning and development activities of units of local government with the planning activities of regional agencies and state government in accord with applicable provisions of law.
(5) It is the intent of this act that adopted comprehensive plans shall have the legal status set out in this act and that no public or private development shall be permitted except in conformity with comprehensive plans, or elements or portions thereof, prepared and adopted in conformity with this act.
(6) It is the intent of this act that the activities of units of local government in the preparation and adoption of comprehensive plans, or elements or portions thereof, shall be conducted in conformity with the provisions of this act.
(7) The provisions of this act in their interpretation and application are declared to be the minimum requirements necessary to accomplish the stated intent, purposes, and objectives of this act; to protect human, environmental, social, and economic resources; and to maintain, through orderly growth and development, the character and stability of present and future land use and development in this state.
(8) It is the intent of the Legislature that the repeal of sections 163.160 through 163.315 by section 19 of chapter 85-55, Laws of Florida, shall not be interpreted to limit or restrict the powers of municipal or county officials, but shall be interpreted as a recognition of their broad statutory and constitutional powers to plan for and regulate the use of land. It is further, the intent of the Legislature to reconfirm that sections 163.3161 through 163.3215 have provided and do provide the necessary statutory direction and basis for municipal and county officials to carry out their comprehensive planning and land development regulation powers, duties, and responsibilities.
[10] § 163.3194, Fla. Stat. (1985).
[11] While staff recommendations by the planning department of a zoning entity are not binding on the zoning authority, they are due great weight, particularly when the Comprehensive Planning Act is involved. 1 Florida Real Property Practice Service § 1.01.B.3 at 19.
[12] The final vote to approve rezoning came a week after the hearing when a fifth commissioner appeared to break the two to two tie vote. No additional evidence was taken at that meeting. As irregular as it was, I agree with the majority that there is no procedural ground for a court to reverse this rezoning vote.
[13] Yokley, 1 Zoning Law & Practice (1978) § 5-2.
[14] Anderson, 4 American Law of Zoning 3d, (1986) § 23.14; 40 A.L.R.3d 372 Requirement That Variations or Exceptions Be Made In Accordance With Comprehensive Plan § 163.3194(4)(a).
[15] 40 A.L.R.3d 372, at 392; see Norwood-Norland Homeowners Assn. v. Dade County, 511 So.2d 1009 (Fla. 3d DCA 1987), rev. den., 520 So.2d 585 (Fla. 1988).
[16] Norwood-Norland Homeowners Assn. v. Dade County, 511 So.2d 1009 (Fla. 3d DCA 1987), rev. den., 520 So.2d 585 (Fla. 1988). 1 Florida Real Property Practice Service, Ch. 5, p. 37; Chicken 'n Things v. Murray, 329 So.2d 302 (Fla. 1976).
[17] Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987).