553 So.2d 206 (1989)
Peter F. GREGORY and Mary Gregory, Husband and Wife, Appellants,
v.
CITY OF ALACHUA, Ernest A. Spencer, Jr., and Michael H. Spencer, Appellees.
No. 87-1549.
District Court of Appeal of Florida, First District.
October 30, 1989.
Rehearing Denied December 22, 1989.
Melissa Jay Murphy of Holden, Murphy & Eubank, Gainesville, for appellants.
Neil A. Malphurs of Malphurs & Brown, Alachua, for appellee City of Alachua.
A. Bice Hope, Gainesville, for appellees Spencer.
ERVIN, Judge.
Appellants, Peter F. Gregory and Mary Gregory (Gregorys), seek review of a final judgment entered in favor of the defendants below, the City of Alachua (City), Ernest A. Spencer, Jr., and Michael H. Spencer (Spencers), in their suit challenging two development orders issued by the City. Because of inconsistencies in the pleadings, trial and judgment, we reverse and remand.
The Gregorys and Spencers are neighboring landowners. The Spencers petitioned the City to have two parcels rezoned, one from agricultural to commercial and the other from agricultural to mobile home park. The City granted the Spencers' petition and entered two developmental orders rezoning the property accordingly on June 16, 1986. Within 30 days after the two development orders were entered, the Gregorys filed a three-count complaint against the City. Count I, seeking injunctive and declaratory relief, was brought under Section 163.3215, Florida Statutes (1985),[1] and alleged that the development orders were invalid under Section 163.3194, Florida Statutes (1985),[2] because the city commission and planning commission failed to make the required factual findings regarding consistency with the comprehensive plan adopted by the City of Alachua in *207 February 1981 when the orders were enacted. Count II, also seeking injunctive and declaratory relief, was, as Count I, brought under section 163.3215 and alleged that the development orders were contrary to the provisions of section 163.3194, because the subject properties' revised zoning designations were inconsistent with the comprehensive plan, which had designated the properties as agricultural. Count II further alleged that the orders were inconsistent with certain other provisions of the comprehensive plan, such as economic policies, short-term policies for land use and development and long-term commercial development, among others. Count III was a common law challenge seeking declaratory and injunctive relief under the theory that the two revised zoning designations were arbitrary, unreasonable and had no substantial relation to public health, safety, morals or general welfare.
The City filed a motion to dismiss Counts I and II on the ground that section 163.3215 only grants relief from development orders which are not consistent with comprehensive plans adopted under chapter 163 and that no relief was available under section 163.3215, because the City's comprehensive plan was not adopted pursuant to chapter 163. The City also moved to dismiss the complaint for lack of standing. Thereafter the Spencers sought and were granted the right to intervene in the action as party defendants, and they in turn joined in the City's motions; the defendants withdrew their motion to dismiss Counts I and II, and the court denied their motion to dismiss for lack of standing.
The matter was set for nonjury trial. The Gregorys subsequently agreed not to pursue Counts II and III relating to the rezoning orders' inconsistency with the comprehensive plan and their arbitrariness and lack of relation with public health, safety or welfare. Therefore, the issues to be tried were set forth in the order of pretrial compliance as follows:
1. Whether the records before the City Commission must reflect presentation of substantial competent evidence supporting a finding made of record of consistency of the zoning action with the comprehensive plan?
2. Whether the records before the City Commission in this case in fact reflect presentation of substantial competent evidence supporting whether the zoning action was consistent with the comprehensive plan?
3. If the records before the City Commission in fact are silent on such evidence, whether the zoning action is automatically inconsistent with the comprehensive plan?
4. Whether the Plaintiffs are "aggrieved or adversely affected parties" with regards to the commercially-zoned property?
Although there appeared to be a misunderstanding between the judge and the attorneys regarding the issues to be tried,[3] *208 the matter proceeded to trial on the above-stated issues. The evidence presented consisted of the testimony of several city commissioners and officials regarding their actions and considerations and an expert who testified that the record did not contain sufficient evidence to support a finding of consistency with the City's comprehensive plan. The trial judge thereafter made the following findings:
1. This is an action under § 163.3215, Florida Statutes (1986) [sic] to have the City of Alachua zoning ordinances numbers 0-86-13 and 0-86-16 declared invalid as being inconsistent with the City's Comprehensive Plan.
2. The Plaintiffs bear the burden of proof to show by competent substantial evidence that the City's actions being challenged are inconsistent with the City's Comprehensive Plan.
3. The Plaintiffs have not met their burden.
Based upon the foregoing findings, judgment was rendered on September 24, 1987, in the defendants' favor. Although the Gregorys timely petitioned for clarification of the judgment, their motion was denied and this appeal was instituted.
Although we find that only consistency challenges may be brought under section 163.3215, and that the Gregorys failed to show that the orders were not consistent with the comprehensive plan adopted by the City, we do not believe that such conclusions mandate affirmance of the trial court's order.[4] This is so because, while the complaint states that it is brought under section 163.3215, the pleadings were *209 impliedly amended to seek relief in the form of appellate review, and such issue was in effect tried by consent. See Di Teodoro v. Lazy Dolphin Dev. Co., 418 So.2d 428, 429 (Fla. 3d DCA 1982), review denied, 427 So.2d 737 (Fla. 1983) ("When an issue is tried by implied consent, that issue can be treated in all respects as if it had been raised in the pleadings."); Ford Motor Co. v. Hill, 381 So.2d 249 (Fla. 4th DCA 1979), certified question answered and decision approved, 404 So.2d 1049 (Fla. 1981) (although original complaint did not allege strict liability count, the issue was tried by implied consent of all parties).
In the instant case, the issues framed in the order of pretrial compliance clearly indicate that the matter was to be tried via appellate review. See, e.g., City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla. 1982) (circuit court, in reviewing administrative action, must "determine whether procedural due process is accorded, whether the essential requirements of the law have been observed, and whether the administrative findings and judgment are supported by competent substantial evidence."). See also Battaglia Fruit Co. v. City of Maitland, 530 So.2d 940, 944 (Fla. 5th DCA), cause dismissed, 537 So.2d 568 (Fla. 1988) (certiorari review of county commissioners' approval of application for rezoning); Norwood-Norland Homeowners' Ass'n, Inc. v. Dade County, 511 So.2d 1009, 1012 (Fla. 3d DCA 1987), review denied, 520 So.2d 585 (Fla. 1988) (certiorari review of Dade County Commission's approval of zoning resolution rezoning property for Dolphin Stadium Complex). It is equally clear from the record of the trial proceedings that the judge intended not to conduct a de novo proceeding, but to conduct an appellate review of the commission proceedings.[5]
However, once the issues were framed by the pretrial order and the discussion which occurred at the outset of the circuit court proceeding, the trial court rendered a final order which appears to relate back to the issues as framed in the initial complaint; that is, whether the Gregorys were entitled to injunctive or declaratory relief under section 163.3215 pursuant to a consistency theory. Nothing in the final order indicates whether the court determined procedural due process was accorded, whether the essential requirements of law had been observed, or if it found competent, substantial evidence tending to prove that the development orders were consistent with the City's comprehensive plan. Thus, while the written judgment appears to resolve the issues presented in the complaint, it fails to resolve the issues set forth in the pretrial order.
Certainly the proceedings in the circuit court were unique. The complaint sought relief under a statute which apparently provides for relief only when a challenge to the consistency of an order is made. The *210 matter then proceeded to trial on what clearly appears to be appellate issues. The proceeding, however, was of a hybrid nature  appellate issues decided on both the record of the proceedings before the city commission and new evidence presented before the circuit court.[6] Then, after placing the matter in an appellate posture, the trial judge entered an order relating back to the consistency issue.
Because the trial court failed to resolve the appellate-type issues set forth in the pretrial order, which issues were actually tried by the implied consent of the parties, the case must be reversed and remanded to the circuit court for entry of additional findings based upon the record before the city commission and the new evidence submitted in the circuit court proceeding, which address and resolve the issues specified in the pretrial order.
REVERSED and REMANDED for further proceedings.
BOOTH, J., concurs.
WENTWORTH, J., dissents with written opinion.
WENTWORTH, Judge, dissenting.
This is an appeal from a final judgment of the circuit court for Alachua County denying injunctive and declaratory relief against the appellee City of Alachua after evidentiary hearing in an action brought by the appellants Peter and Mary Gregory pursuant to section 163.3215, Florida Statutes, the Local Government Comprehensive Planning and Land Development Regulation Act. I would affirm the denial of relief under the Act for reasons set out below, without determining that the city zoning ordinances in question were or were not consistent with its comprehensive plan under the Act.
Section 163.3215, Florida Statutes, provides for suits challenging the approval of zoning and other "development orders" granted by any local government after October 1, 1985, and states:
163.3215 Standing to enforce local comprehensive plans through development orders.

(1) Any aggrieved ... party may maintain an action for injunctive or other relief ... to prevent ... any action ... that is not consistent with the comprehensive plan adopted under this part.
...
(3) ... (b) Suit under this section shall be the sole action available to challenge the consistency of a development order with a comprehensive plan adopted under this part.
I would conclude that the final judgment entered by the trial court in this case is properly framed to dispose of this action under the statute as de novo and not appellate in nature, and that it correctly held accordingly that "the plaintiffs bear the burden of proof to show by competent substantial evidence that the city's actions ... are inconsistent with the city's comprehensive plan." I would also find that by this conclusion the court necessarily and correctly resolved in the negative the issues stated by pretrial order herein, i.e.,:
1. Whether the records before the City Commission must reflect presentation of substantial competent evidence supporting a finding of consistency of the zoning action with the comprehensive plan? (e.s.)
2. Whether the records before the City Commission in this case in fact reflect presentation of substantial competent evidence supporting whether the zoning action was consistent with the comprehensive plan? (e.s.)
3. If the records before the City Commission in fact are silent on such evidence, whether the rezoning action is automatically inconsistent with the rezoning plan? (e.s.)
Although the trial court found that "plaintiffs have not met their burden," that conclusion *211 on the record in this case should be regarded as a recognition that the Gregorys did not seek to prove inconsistency in fact but sought only to prove that evidence of record before the City was inadequate to show consistency. However proper the latter standard may be in describing the burden of an appellant or petitioner seeking review of zoning ordinances by other means, cf., Norwood-Norland Homeowners v. Dade County, 511 So.2d 1009 (Fla. 3d DCA 1987), I find the above quoted language in the statute, upon which the complaint was expressly based, provides only for a suit or action clearly contemplating an evidentiary hearing before the court to determine the consistency issue on its merits in the light of proceedings below but not confined to matters of record in such proceedings.
Appellants' brief expressly states their agreement not "to pursue ... the claim that the rezonings were in fact inconsistent with the comprehensive plan." Whether or not the court erred in admitting evidence beyond the issues stated by pretrial order and extraneous to the "record" considered by the city, the final judgment correctly denied injunctive relief on the ground that "plaintiffs have not met their burden," and correctly declared that burden: "to show ... that the city's actions ... are inconsistent." Appellants do not contend that they carried that burden below, but argue only that the statute should not be so construed.
Recent opinions applying the Act in a variety of procedural contexts do not appear to be determinative of the issue presented here. Machado v. Musgrove, 519 So.2d 629 (Fla. 3d DCA 1987); Southwest Ranches v. Broward County, 502 So.2d 931 (Fla. 4th DCA 1987); and City of Jacksonville v. Grubbs, 461 So.2d 160 (Fla. 1st DCA 1984). A close analysis of these opinions, and their delineation of the proper application of a strict scrutiny as opposed to "fairly debatable" standard of review under the cited Act, would be necessary if the judgment in this case had affirmatively determined the ordinances to be consistent with the City's comprehensive plan. Because I conclude the judgment does not make that determination, I would affirm without any inference that a determination of consistency could be affirmed on the record here. I would note instead that there exist serious questions as to proof of a comprehensive plan by which consistency could be measured.[7]
NOTES
[1] Section 163.3215(1) provides:

Any aggrieved or adversely affected party may maintain an action for injunctive or other relief against any local government to prevent such local government from taking any action on a development order, as defined in s. 163.3164, which materially alters the use or density or intensity of use on a particular piece of property that is not consistent with the comprehensive plan adopted under this part.
(Emphasis added.)
[2] Section 163.3194(1)(a) provides:

After a comprehensive plan, or element or portion thereof, has been adopted in conformity with this act, all development undertaken by, and all actions taken in regard to development orders by, governmental agencies in regard to land covered by such plan or element shall be consistent with such plan or element as adopted.
[3] This misunderstanding is best illustrated in the following colloquy:

MS. MURPHY [Attorney for the Gregorys]: What the question really is or what the issue really is in this litigation is whether or not the City had before it substantial competent evidence to make a determination.
THE COURT: You're talking about mythology now. You're not talking about issues. Let's stick with the issue. Let's don't chase rabbits. The issue, isn't it, is whether or not, whatever action the City took, is consistent with their zoning plan? Isn't that what we're here about? Isn't that what this thing is all about?
MR. HOPE [Attorney for the Spencers]: Your Honor, the lawsuit, if I may speak, when it was filed I think that's where the plaintiffs were coming from. I think subsequent to the filing of the lawsuit some developing case law came out suggesting to the plaintiffs that they could narrow the issues in this suit based upon what they perceived to be a lack of evidence in the, quote, City's record.
THE COURT: Well, let's go back. We are mixing apples and oranges here. Let me put it another way very simply  and I want a very simple answer  what is it you all want me to decide?
MS. MURPHY: Whether or not 
THE COURT: No. What is it that you have raised in your lawsuit for me to decide? I'm not interested in what you want me to decide. What have you raised in these pleadings?
What have you raised in these pleadings? What are the issues raised by these pleadings that this Court is to decide? That's the best way to put it. The ball is back in your court now. You all tell me. I've been trying to tell you what I see. MS. MURPHY: Whether  I'll verbalize it first  whether the evidence that was presented to the city commission as reflected by the evidence that we're going to present is sufficient under Chapter 163 to enable them to make a decision of consistency.
THE COURT: Well, isn't that what I said at the outset? That's what I thought I said.
MS. MURPHY: Yes, sir, that is what you said at the outset.
THE COURT: All right.
MS. MURPHY: But then what you seemed to be moving toward was the actual issue of consistency, which would possibly bring in collateral evidence that was not presented at the city commission meeting.
THE COURT: I don't see that. I don't see that.
MS. MURPHY: Well, we are limiting the evidence to that which was presented to the city commission and that which is reflected in the City's records and that is all, and so the issue is whether 
THE COURT: And then the question is, is the evidence presented to the City and upon which they based their action sufficient to justify the  consistent with the plan, right?
If I just look at the evidence, and after I look at the evidence, what do you want me to decide after I've seen it? Isn't that the question you want me to decide, was the action of the City consistent with the plan? Aren't you asking me, saying, "Look at the evidence, Judge?"
MS. MURPHY: We are asking you to look at the evidence and determine whether or not that evidence was sufficient to support the City's decision.
THE COURT: That's exactly what I tried to say, I thought. Maybe I'm not communicating too well.
MR. MALPHURS [Attorney for the City]: Your Honor, I think we are.
THE COURT: You all are not dealing with President Reagan. You all are not dealing with a great communicator here this morning.
MR. MALPHURS: We think the issue is as the Court said. If the City's action was consistent with the comprehensive plan, then it was a valid action. It doesn't make any difference what the City's record reflects.
THE COURT: That's what I just said.
MR. MALPHURS: I know, Your Honor, but she's saying the City's record must reflect that. We say the City doesn't have to have a record showing this. The only question is, was it or not consistent with the plan. Ms. Murphy says, no, in this particular case the Court does not have to decide whether or not it was consistent. They're saying that the City's record, the record itself does not show that it was consistent.
We're saying that is not the case. If she is going to attack the City's action, the burden is upon her to show that it was not consistent.
(Emphasis added.)
[4] Unlike the dissent, we do not read section 163.3215 as abrogating remedies previously available to parties seeking to challenge zoning orders on grounds such as procedural due process violations. See e.g., Battaglia Fruit Co. v. City of Maitland, 530 So.2d 940 (Fla. 5th DCA), cause dismissed, 537 So.2d 568 (Fla. 1988) (challenging county commissioners' procedures following a tie vote on a zoning application). See also Education Dev. Center, Inc. v. City of West Palm Beach Zoning Bd. of Appeals, 541 So.2d 106 (Fla. 1989) (certiorari review of zoning board's denial of zoning application).
[5] The nature of the proceedings was discussed in the following colloquy:

THE COURT: Is this to be a review, the nature of these proceedings, or is it to be a trial de novo?
I don't think it's intended to be a trial de novo under the statute, especially in view of my prior ruling. Is that correct?
MS. MURPHY: No, sir. It's not intended to be a trial de novo.
THE COURT: Okay. If it's to be a trial de novo, then what purpose could be served by such other than to ask me to second-guess whatever action the City took?
MR. MALPHURS: Your Honor, we would say, certainly in the First District, that these reviews are trial de novo.
THE COURT: Well, I'm not going that route, Mr. Malphurs. We don't have any serious issue here asking me to second-guess the City. The only issues, as I see it, are two-fold, is the City's action consistent with their comprehensive plan and is the evidence upon which that action is based sufficient to support it.
It's no different from what you have in any other type of review. We do it all the time in ruling on motions for new trials, on motions for directed verdicts. It is a standard procedure in any appellate review of a finding of fact, that is to say, a jury verdict or a judgment entered by the Court following a nonjury trial. Simply, is the evidence that the court had before it sufficient to support its action?
And that essentially is what we're doing here. We're looking at the evidence that the City had before it to see if the evidence supports the departure, if there was a departure, from the  or supports the claim by the plaintiff that there was a departure from the City's comprehensive plan.
(Emphasis added.)
[6] Although the rule in appellate proceedings is that no new evidence will be considered, in this case both parties introduced evidence outside the city commission record and neither objected. Under the circumstances, any objection to the introduction of material outside the record was waived by both parties.
[7] The City of Alachua's comprehensive plan, dated 1981, apparently fails to conform to section 163.3177(6)(a), which requires that a comprehensive plan shall include:

a future land use plan element designating proposed future general distribution, location, and extent of the uses of land for residential uses, commercial uses, industry, agriculture, recreation, conservation, education, public buildings and grounds, other public facilities, and other categories of the public and private uses of the land. The future land use plan shall include standards to be followed in the control and distribution of population densities and building and structure intensities. The proposed distribution, location, and extent of the various categories of land use shall be shown on a land use map or map series which shall be supplemented by measurable goals, objectives, and policies. (e.s.)
A 1981 objection to the city's comprehensive plan by the Alachua County Planning Commission notes that "without a physical land use plan, the county is unable to ascertain whether or not there is consistency of land uses during the planning periods for either the city's or the county's comprehensive plans." Members of the City Commission admitted during the rezoning procedures herein that no future land use map had been developed by the city. In Battaglia Fruit Co. v. City of Maitland, 530 So.2d 940 (Fla. 5th DCA 1988), a dissenting opinion notes that "without a comprehensive map or plan as part of its policy, it is doubtful that Orange County would be in compliance with the requirements of the Local Government Comprehensive Planning and Lands Development Regulation Act (Chapter 163)." Id. at 950. Without any designations in the city's comprehensive plan as to proposed future uses of specific parcels of land, there appears to be no basis on which the Planning and Zoning Board or the City Commission could have determined consistency of the proposed rezoning actions with the comprehensive land use plan. The city's comprehensive plan contains a land use element comprised of broad goals, long-term and short-term policies, and more specific standards as to economy, land use and development, transportation, conservation, recreation, and housing. The record would indicate, however, that the rezoning actions failed to comply with even the broad goals, policies and standards set forth in the plan.