DAUKSCH, Judge.
This is an appeal from the trial court's order on petition for writ of certiorari reversing the decision of appellee, the Board of Adjustment, determining the size of and approving fencing for appellant’s, Anthony Rivera’s, junk yard. This case began when Michael May, Zoning Director of Marion County, wrote a letter to Rivera requesting his presence before the Board of Adjustment to discuss the screening of his junk yard. May advised Rivera to bring with him a screening device, site plan, pictures of all sides of his junk yard and a sample of the material which he planned to use for the Board’s review. The applicable zoning ordinance states:
EXISTING JUNK YARDS. ALL JUNK YARDS EXISTING ON THE EFFECTIVE DATE OF THIS ORDINANCE SHALL, WITHIN NINETY (90) DAYS AFTER THE EFFECTIVE DATE OF THIS ORDINANCE, FILE A SCREENING PLAN SHOWING THE TOPOGRAPHY OF THE JUNK YARD, THE LOCATION OF THE PROPOSED SCREENING DEVICE, THE NATURE OF THE PROPOSED SCREENING DEVICE, AND THE LOCATION AND TYPE OF PROPOSED GATES. THE BOARD OF ADJUSTMENT SHALL CONSIDER THE PROPOSED SCREENING PLAN, AND SHOULD IT BE FOUND ACCEPTABLE, APPROVE SAME WITH SUCH MODIFICATIONS AS MAY BE AGREED UPON BY THE APPLICANT. SCREENING PLANS WHICH ARE NOT APPROVED SHALL BE RESUBMITTED WITH SUCH CHANGES OR MODIFICATIONS AS MAY BE REQUIRED BY THE BOARD. WITHIN NINETY (90) DAYS AFTER APPROVAL, OR SUCH EXTENDED PERIOD OF TIME AS MAY BE GRANTED BY THE BOARD OF ADJUSTMENT, THE SCREENING SHALL BE CONSTRUCTED IN ACCORDANCE WITH THE APPROVED PLAN AND THEREAFTER SHALL BE MAINTAINED IN ACCORDANCE WITH THE APPROVED PLAN. ANY JUNK YARD EXISTING ON THE EFFECTIVE DATE OF THIS ORDINANCE SHALL BE DEEMED TO BE A PUBLIC NUISANCE, AND THE COUNTY MAY TAKE APPROPRIATE STEPS TO ABATE SUCH PUBLIC NUISANCE.
Rivera appeared before the Board of Adjustment and a hearing was held. Also present were his neighbors, James and Kay Dawson and J.A. and Lillian Perry. The minutes from the previous Board meeting indicated that the Board had decided not to take any action until the present hearing at which time it would then determine the size of Rivera’s junk yard as of April 1, 1982, the date on which Marion County’s zoning code had become effective. The zoning code prohibited operation of a junk yard on Rivera’s property unless it was operational before April 1, 1982, and therefore a nonconforming use which could be continued but not expanded.
The Board initially focused its attention at the hearing on resolving whether Rivera’s property had been used as a junk *1387 yard on April 1, 1982 and, if so, to what extent. Its focus changed during the latter part of the hearing at which time it attempted to determine Rivera’s present use of the property. Although conflicting evidence was presented, the Board determined that Rivera’s property had been used as a junk yard since 1982. It further determined what it believed to be the boundaries of the property. Finally, it approved Rivera’s screening plan.
Rivera’s neighbors, the Dawsons and the Perrys, filed a petition for writ of certiorari in the circuit court alleging that the Board of Adjustment’s decision departed from the essential requirements of law by (1) expanding Rivera’s use of the property beyond the manner in which it had been used on April 1, 1982; (2) expanding his use and grandfathering in that portion of the property beyond the fence which he had previously erected in order to define the limits of his business; (3) rezoning his property without the requisite notice and procedural due process required by the zoning code; and by (4) approving fencing for his property without a quorum.
A hearing was held on the petition for writ of certiorari in circuit court. Although the county argued that the only issue before the Board was whether Rivera’s screening plan met the requirements of the zoning ordinance, the trial court disagreed stating that the Board’s approval of the screening plan could not be ascertained without a determination as to whether Rivera’s use of the property on April 1, 1982 was conforming. The court found it ridiculous that a party should be required to file a separate lawsuit in order to determine the latter issue. After the hearing the court found that the Board had properly decided whether Rivera’s property was operated as a junk yard on April 1, 1982 before approving his screening plan. It further observed that all parties present had concurred in the procedure and that the procedure made good sense. The court found that the Board’s failure to follow this procedure could have resulted in sanctioning an illegal use of the property. It stated its holding as follows:
If, as Marion County suggests, the Board of Adjustment only had authority to determine the fencing requirements of the Rivera junk yard and did not determine if the junk yard was operating within the requirements of the Marion County Zoning Code, a necessary prerequisite to the approval of junk yard screening, then the court must conclude that the decision of the Board of Adjustment departs from the essential requirements of law and failed to provide procedural due process.
******
If the Dawsons and Perrys are correct, the Board’s decision is not supported by competent substantial evidence.
We reverse. A circuit court’s review of a county agency’s action is limited to a determination of whether the agency provided procedural due process, observed the essential requirements of law and supported its findings by substantial, competent evidence. City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982). See also Battaglia Fruit Co. v. City of Maitland, 530 So.2d 940 (Fla. 5th DCA), dismissed, 537 So.2d 568 (Fla.1988). As the county argued below, the only proper issue before the Board of Adjustment was whether Rivera’s screen or screening plan complied with section 10.2(3)3.H. of the Marion County Zoning Code. In this ordinance the Board is given the specific authority to approve or disapprove the screening plan for “all junk yards existing on the effective date of this ordinance.”
Notwithstanding the language in section 5.2 of the ordinance which says that “The nonconforming use of land shall not be extended to any additional land not so used on April 1, 1982,” the Board was not delegated the authority to determine whether Rivera’s use of his property was conforming or nonconforming, Rivera was not provided with prior notice that this issue was to be addressed at the hearing and the issue was not properly raised by the Dawsons and the Perrys in their petition for writ of certiorari. Rivera was simply apprised that he was to appear before the Board for approval of his screen or screening plan. The fact that the Board erroneously misinterpreted the issue which *1388 they were to resolve, thereby placing all parties present at the hearing on notice that it was this issue which would be determined, does not negate the fact that it was without the authority to do so in the first place. The trial court’s reasoning in which it also deemed it absurd that a separate proceeding should be held in order to determine the legality of Rivera’s use of the property is likewise erroneous.
Finally, the record indicates that the trial court improperly reweighed the evidence presented at the Board hearing in determining that there was a lack of substantial, competent evidence to support the Board’s conclusion as to the usage of the property as a junk yard in 1982. A review of the record shows that the evidence as to this point was conflicting and that there is substantial, competent evidence to support the Board’s decision. It is well established that a circuit court is not at liberty to reweigh or evaluate the evidence presented before the agency whose order is being reviewed. De Groot v. Sheffield, 95 So.2d 912 (Fla.1957). See also Chicken 'N' Things v. Murray, 329 So.2d 302 (Fla.1976); Dade County v. Marca, S.A., 326 So.2d 183 (Fla.1976). In any event, neither the trial court nor the parties dispute the Board’s approval of Rivera’s screening plan, the real issue in this case, which is also supported by competent, substantial evidence.
REVERSED.
SHARP, W., and GRIFFIN, JJ„ concur.